W. E. CALDWELL CO., INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 1834.    Promulgated February 3, 1927.

A cash dividend declared on February 1, 1918, payable on April 1, 1918, creates a debt due from the corporation to the stockholders immediately from the date of declaration, and under section 201 (e) of the Revenue Act of 1918, the distribution must be deemed to have come out of prior years' earnings, having been made during the first sixty days of the taxable year. Invested capital should be reduced by the amount of the dividend as of the date of declara-

tion, in accordance with section 326(d) of the same Act, without being affected by any earnings of the taxable year available for dividend purposes.

*J. Robert Sherrod, Esq.*, and *Ward Loveless, Esq.*, for the petitioner.

*T. M. Wilkins, Esq.*, for the respondent.

The Commissioner determined a deficiency in income and excess-profits taxes for the calendar year 1918, in the amount of $9,802.60. The original petition alleged that the petitioner was entitled to special assessment. An answer was filed and a hearing was held at which some testimony was taken. The case was then placed on the reserve calendar to await the decision of the Court of Appeals of the District of Columbia, in the case of *David H. Blair, Commissioner of Internal Revenue, Appellant*, v. *Oesterlein Machine Co.* Before that decision was announced, the petitioner, with the permission of the Board, amended its petition, abandoning its plea for special assessment and alleging error on the part of the Commissioner in computing its invested capital. Only $2,174.19 of the alleged deficiency is in controversy. Most of the facts pertinent to the issue here were stipulated.

### FINDINGS OF FACT.

The petitioner, a Kentucky corporation, had its principal office in the City of Louisville, and was engaged in the manufacture of wood and metal water towers and tanks. On February 1, 1918, at a regular meeting of its directors, a dividend of $80,000 was declared. The minutes of the corporation in regard to the dividend are as follows:

* * * Upon motion of H. B. Wintersmith and seconded by W. B. Caldwell, that a dividend of 40 per cent be paid in cash out of the surplus and earnings for the year 1917, * * * at the office of the company. * * *

Checks in payment of the dividend were sent out on April 4, 1918.

The Commissioner determined the invested capital for the year 1918 to be $460,786.97 and net income to be $129,666.96, but prorated the dividend of $80,000 as being removed from invested capital for 306 days of the year 1918, namely, from March 1, 1918, to the end of the year, resulting in a reduction of invested capital in the amount of $67,068.49. He later admitted, however, that he should have used April 1, 1918, instead of March 1, 1918.

The 1918 earnings available for dividend purposes on April 1, 1918, before deduction of a " tentative tax," amounted to $31,972.68, and after the deduction of a " tentative tax " amounted to $14,788.80.

OPINION.

MURDOCK: The Commissioner admitted that he erroneously reduced invested capital by prorating $80,000 as being removed from March 1, 1918, to the end of the year, and now contends that the prorating should be from April 1, 1918, to the end of the year. He apparently concedes that the 1918 earnings available for dividend purposes on April 1 should be reduced by the proportionate part of a "tentative tax," which he has determined, and should be then deducted from $80,000, and the remainder prorated as being removed from invested capital from April 1, 1918, to the end of the year. The petitioner agrees with him in this, except that he contends that the 1918 earnings available for dividend purposes on April 1, 1918, should not be reduced by the amount of a tentative tax. To this end the parties have stipulated what the deficiency should be in each case. We can not follow their stipulation in this regard, because it is apparent that invested capital, and hence the deficiency, is to be determined in quite a different way, and that the case does not hinge upon our decision of the "tentative tax" question.

In the *Appeal of A. H. Stange*, 1 B. T. A. 810, we had occasion to consider the meaning of the words "any distribution made," as they appeared in section 31 of the Revenue Act of 1916 (added by section 1211 of the Revenue Act of 1917), relating to dividends, which is as follows:

SEC. 31. (a) That the term "dividends" as used in this title shall be held to mean any distribution made or ordered to be made by a corporation * * * out of its earnings or profits accrued since March first, nineteen hundred and thirteen, and payable to its shareholders * * *.

(b) Any distribution made to the shareholders or members of a corporation, * * * in the year nineteen hundred and seventeen, or subsequent tax years, shall be deemed to have been made from the most recently accumulated undivided profits or surplus, and shall constitute a part of the annual income of the distributee for the year in which received, and shall be taxed to the distributee at the rates prescribed by law for the years in which such profits or surplus were accumulated by the corporation, * * * but nothing herein shall be construed as taxing any earnings or profits accrued prior to March first, nineteen hundred and thirteen, but such earnings or profits may be distributed * * * exempt from the tax, after the distribution of earnings and profits accrued since March first, nineteen hundred and thirteen, has been made. This subdivision shall not apply to any distribution made prior to August sixth, nineteen hundred and seventeen, out of earnings or profits accrued prior to March first, nineteen hundred and thirteen.

Likewise, in the *Appeal of Harmon W. Hendricks*, 4 B. T. A. 1257, we considered the same words in the same connection and discussed the effect which the case of *Edwards v. Douglas*, 269 U. S. 204, had upon our previous interpretation of these words. In each instance we held that the words "any distribution made" had

reference to the declaration of a dividend, rather than to the actual time of payment of a dividend. See also *Appeals of Elizabeth W. Stranahan*, 4 B. T. A. 1141; *Mary A. Fitzgerald*, 5 B. T. A. 178; and *Maurice J. Curran*, 5 B. T. A. 180.

The same words appear in section 201(e) of the Revenue Act of 1918, which is as follows:

> Any distribution made during the first sixty days of any taxable year shall be deemed to have been made from earnings or profits accumulated during preceding taxable years; but any distribution made during the remainder of the taxable year shall be deemed to have been made from earnings or profits accumulated between the close of the preceding taxable year and the date of distribution, to the extent of such earnings or profits, and if the books of the corporation do not show the amount of such earnings or profits, the earnings or profits for the accounting period within which the distribution was made shall be deemed to have been accumulated ratably during such period.

The respondent in his brief assumes that we have the same situation before us in this case that we had in the above cases and therefore cites the case of *Routzahn* v. *Mason*, 13 Fed. (2d) 702, decided by the Circuit Court of Appeals for the Sixth Circuit. Louisville, the place of business of this petitioner, is in that circuit. The corporate dividends which came to Mason and formed the basis of his tax were declared near the end of 1916, and were made payable and were paid at various dates in 1917, from February until July. They were returned by Mason as a part of his 1917 income, and the question was whether the 1916 or 1917 taxing rates should be applied. The court below concluded that the " distribution " was made when the dividend was declared, segregated from the body of undivided profits, and became a debt from the company to the stockholder, which he could sell independently of the stock.

The court in a *per curiam* decision said, in reversing the lower court:

> That, as between the stockholder and the corporation and from many points of view, such a declaration is a distribution of profits, is indisputable; but this is a taxing statute, the dominant thought of which is that the citizen should suffer an annual burden upon his annual current income. " Distribution " must mean a disposition which at that moment results in income, because to ascertain taxable income is the purpose and subject-matter of the act, and a dividend declared this year, payable in the next or some more distant year, is not within the normal conception of income for this year.

The case of *Routzahn* v. *Mason*, *supra*, and the decisions of this Board, above cited, considered the meaning of the same words, the meaning of which we are now considering, but from an entirely different angle. Our question has to do with the statutory invested capital of the petitioner and has nothing to do with the time at which the distribution results in income to the distributee, or the rates at which it is taxable to him.

The opinion in *Routzahn* v. *Mason* concedes that from many points of view the declaration of a dividend is a distribution of profits. It holds that since the purpose of the statute is to ascertain taxable income, a dividend declared is not taxable income to the distributee until he receives it. To so decide it was not necessary for the court to hold, and we do not think that it intended to hold, that the words " any distribution made," as they affect invested capital, do not mean the declaration of a dividend.

The reasoning advanced in the *Stange* case was to the effect that upon the declaration of a dividend the corporation immediately becomes the debtor of the stockholder for his proportionate part of the dividend, regardless of the fact that actual payment is not to be made until later. There is abundant authority for this proposition and we have seen no authority to the contrary. Attention is called to the cases quoted and cited in the *Appeal of A. H. Stange*, *supra*.

In the case of *Wheeler* v. *Northwestern Sleigh Co.*, 39 Fed. 347, (Circuit Court, E. D. Wisconsin, 1889) the court said:

By the declaration of a dividend, however, the earnings, to the extent declared, are separated from the general mass of property, and appropriated to the then stockholders, who become creditors of the corporation for the amount of the dividend. The relationship of the stockholder to the corporation, as to the amount of the dividend, is thus changed from one of partnership ownership to that of creditor. He thereafter stands * * * with respect to the dividend, as a creditor upon a par with other creditors of the corporation. * * * That the dividend is payable at a future date can work no distinction in the right. The debt exists from the time of the declaration of dividend, although payment is postponed for the convenience of the company.

And in *Jermain* v. *Railroad Co.*, 91 N. Y. 483, the court said:

When a dividend has once been declared out of net earnings, the amount of such dividend is no longer a part of the assets of the company, but is appropriated or set apart for the shareholders.

This case was cited in *People ex rel. United States Trust Co.* v. *Barker*, 86 Hun, 131; 33 N. Y. S. 388, which held that the amount of a dividend such as we are here considering constituted no part of surplus profits or reserve fund from the date of declaration.

*Billingham* v. *E. P. Gleason Mfg. Co.*, 101 App. Div. 476; 91 N. Y. S. 1046, stated:

* * * * For nothing is better understood than that a dividend, when declared, is a debt due absolutely to the stockholders. It was an obligation perfect and complete in its character, although payment was postponed to a future time. It was *debitum in praesenti, solvendum in futuro*. (Affd. 185 N. Y. 571; 78 N. E. 1099.)

*Staats* v. *Biograph Co.*, 236 Fed. 454 (C. C. A., Second Circuit), in an opinion by Rogers, C. J., citing and quoting from Taylor on

Corporations, 5th ed., sec. 568; Machen on Modern Law of Corporations, vol. 2, sec. 1358; Morawetz on Corporations, vol. 1, sec. 445, held:

But if a board of directors should declare a cash dividend and make a public announcement of the fact, the courts have held that thereafter the board has no right to reconsider and rescind its action. The reason seems to be that the declaration of the dividend sets apart from the profits of the corporation a sum which is to be paid to the stockholders in proportion to their shares, and that it creates a debt due from the corporation to each shareholder, resulting in the relation of debtor and creditor. The dividend divides the property which belongs to the corporation into that which the corporation retains and that which the corporation agrees to pay to the stockholders, and which it is thereby bound to pay. That which one person is bound to pay to another is a debt. *Lockhart* v. *Van Alstyne*, 31 Mich. 76, 78, 18 Am. Rep. 156 (1875).

In *Park* v. *Gilligan*, 293 Fed. 129, District Court, So. Dist. of Ohio, it was said that:

It is well settled that the declaration of a dividend creates a debt from the corporation to the stockholders.

See also *Ford* v. *Snook*, 205 App. Div. 194; 199 N. Y. S. 630, wherein other authorities are cited; *Nutter* v. *Andrews*, (Mass.) 142 N. E. 67, citing Massachusetts, New York and Kentucky cases in support; *Petty* v. *Hagan*, 205 Ky. 264; 265 S. W. 787; *Segerstrom* v. *Holland Piano Mfg. Co.*, 160 Minn. 95; 199 N. W. 897; *Benas* v. *Title Guaranty Trust Co.*, 216 Mo. App. 53, 267 S. W. 28; *Thomas* v. *Laconia Car Co.*, 251 Mass. 529; 146 N. E. 775; *Appeal of Watsontown Brick Co.*, 3 B. T. A. 85; and Fletcher's Cyclopedia of Corporations, sec. 3653 in vol. 6, and the same section in vol. 11, 1924 Supplement, wherein numerous authorities are cited.

If such a relationship is created upon the declaration of a dividend, from that moment the corporation has no right to have the amount of the dividend included in its statutory invested capital, as defined by section 326 of the Revenue Act of 1918. If it uses the money or property with which it must pay the dividend, to the amount of the dividend declared it is using borrowed money and such is excluded from statutory invested capital. In the above Act, see sections 325 (a), where the term "borrowed capital" is defined, and 326 (b), which eliminates borrowed capital from invested capital; and also see the *Appeal of Wm. H. Davidow Sons Co.*, 1 B. T. A. 1215. The distribution, so far as invested capital is concerned, takes place at the date of declaration of the dividend.

In the present case, under section 201 (e) of the Revenue Act of 1918, the distribution must be deemed to have come out of prior years' earnings, having been made during the first sixty days of the taxable year, and $80,000 should be removed from invested capital from February 1, 1918, to the end of that year, in accordance with section

326 (d), without being affected by any earnings of that year available for dividend purposes.

> *Judgment will be entered on notice of 15 days, under Rule 50.*