BACON-McMILLAN VENEER CO., PETITIONER, *v.* COMMISSIONER OF
INTERNAL REVENUE, RESPONDENT.

Docket No. 34611. Promulgated August 13, 1930.

*George E. H. Goodner, Esq.,* and *Walter K. Smith, Esq.,* for the
petitioner.

*John D. Foley, Esq.,* for the respondent.

OPINION.

TRAMMELL: The parties are in accord as to the method of determining the depreciation, that is, by the unit-of-production method, and are in disagreement only with respect of the amount of timber available to be used as a factor in the determination of the amount of the allowable depreciation deduction. The controversy is over the question whether an amount of 45,000,000 feet of timber purchased in January, 1923, should be added to the timber owned and considered as available in determining the timber supply for the purpose of determining the depreciation rate on the plant in 1922.

The petitioner relies on the case of *Colmer-Green Lumber Co.*, 12 B. T. A. 256, in which case we held as follows:

> The fact that there was other timber in the vicinity of the petitioner's operations is not alone determinative of whether such timber is available. Although the petitioner purchased a large amount of timber in 1922, it would have been unable to have financed the purchase of it in 1918, 1919, and 1920. The evidence shows that other mills were operating near the petitioner and that prior to the time the timber was offered for sale to it there would have been no basis for assuming that it instead of the other mills would have been able to acquire the additional timber or any part thereof. The other timber was apparently no more available to the petitioner than any of the other mills. There is no more reason in determining the timber available to the petitioner to add the difference between what it owned and the 30,000,000 feet than for determining that the other timber not owned by the petitioner was available to each of the other mills. This manifestly would have been unreasonable. The availability of the timber supply should be considered in the light of facts known during the taxable years and those which could reasonably have been anticipated * * *.

We held in that case that the timber not owned by the petitioner should not have been considered as available to it in determining

the allowable depreciation deduction by the unit-of-production method.

But here the facts are materially different from those in the *Colmer-Green* case, *supra*. The petitioner has been acquiring additional timber at different times since its organization and there are no facts or circumstances which would indicate that the timber purchased in January, 1923, was not known or reasonably considered as available in 1922. The respondent, on the other hand, has determined the allowable depreciation deduction upon the theory that this timber was available and the burden is upon the petitioner to affirmatively show not only that it did not own the timber in the taxable year, but that it was not available.

In the *Colmer-Green* case it was shown that the petitioner was not financially able to have acquired the timber during the taxable year involved and it was also shown that there were other mills operating in the vicinity who might have acquired the timber. It also appears that the timber purchased subsequent to the taxable years involved was some 16 or 18 miles from its other operations, and that such timber was acquired in connection with the purchase of another mill. It also appears that the petitioner had no means of knowing whether it could have acquired the timber. Here, however, the evidence is limited merely to the fact that the petitioner did not own the timber which it acquired in 1923.

The real question here is whether the petitioner, from all the facts and circumstances, had reasonable grounds for believing that the timber acquired in January, 1923, either could not or would not have been acquired by it for purposes of its operations. The unit-of-production method is to be adopted as a method of determining the depreciation deduction only where by such method a reasonable allowance may be determined.

We must keep in mind that the statute provides for the reasonable deduction on account of the exhaustion, wear and tear of the physical property and that it is the plant and machinery with which we are concerned in determining this depreciation deduction. Such a deduction should be allowed as would return to the taxpayer the cost or March 1, 1913, value of the exhaustible assets by the time their useful life has become exhausted, the theory being that when the unit-of-production method is adopted the physical assets, consisting of plant, machinery, etc., would become exhausted and its useful life extinguished when the timber or other resources in connection with which it is used, or from all existing facts it might reasonably be considered or anticipated that it would be used, have become exhausted. The cost or March 1, 1913, value of the amounts should be returned to the taxpayer only over the period which ends

when all the facts known or which might reasonably be anticipated indicate that they will become exhausted. The unit-of-production method should not be so applied as to be inconsistent with this principle. We should be slow to allow a deduction for exhaustion of assets not shown actually to have taken place, and this is not shown in this case without an affirmative showing that the petitioner under the facts existing or which could be reasonably foreseen, had no further use for the plant after cutting the timber actually owned.

Under the facts in this case, which we think are distinguishable from the facts in the *Colmer-Green* case, we think there is not sufficient evidence to indicate that the timber acquired in 1923 should not be considered as available in the taxable year for the purpose of determining the amount of timber which should be considered in determining the exhaustion of the plant. We must, therefore, approve the determination of the respondent.

On the question of dividends payable in Liberty Loan bonds, the real controversy centers around the interpretation of the resolution of the board of directors in declaring the dividend. If the resolution be interpreted as declaring an ordinary dividend of a definite amount and then providing that that dividend should be paid in Liberty bonds, we think that the principle in the case of *Callanan Road Improvement Co.*, 12 B. T. A. 1109, is applicable.

The resolution provided that a 50 per cent dividend be declared. A 50 per cent dividend is a definite amount. It created an obligation of the corporation to its stockholders. Then when that obligation was satisfied by the distribution of the Liberty bonds owned by the petitioner, we have a realization of a gain through disposition thereof. When the dividend of 50 per cent was declared the corporation could not satisfy the legal demands of the stockholders by delivering to them bonds less than that value. The corporation discharged its obligation to its stockholders by giving them the bonds which here had a value in excess of the cost. We think that this is a realization of gain in every substantial sense of the word. The petitioner in his brief concedes that if the dividend had been regularly declared payable in money and the bonds had been exchanged in settlement of the obligation that the transaction might give rise to taxable income, but contends that in this case the property was distributed in kind. However, before the property was distributed in kind a definite amount, to wit, a 50 per cent dividend, had been declared. If, on the other hand, instead of providing for a definite percentage in the way of a dividend, if the resolution had merely provided that the Liberty bonds should be distributed by way of dividends, a different situation would have been presented which is

clearly distinguishable from the case we have before us. In our opinion, the petitioner realized taxable gain when the Liberty Loan bonds were distributed in satisfaction of the dividend obligations.

*Judgment will be entered under Rule 50.*

*George E. H. Goodner, Esq.,* and *Walter K. Smith, Esq.,* for the petitioner.

