COLUMBIA PACIFIC SHIPPING COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 50968. Promulgated February 1, 1934.

*Erskine Wood, Esq.,* and *M. M. Matthiessen, Esq.,* for the petitioner.

*William E. Davis, Esq.,* and *Paul E. Waring, Esq.,* for the respondent.

966

968

OPINION.

ARUNDELL: The errors assigned by the petitioner are (a) that the Commissioner erred by holding that it and the China Pacific Co., the owner of all of the capital stock of the petitioner, properly filed separate returns of income for 1928, and (b) that the Commissioner erred by including as taxable income of the petitioner the amount of $165,638.89, claimed to represent a profit realized by petitioner in connection with the declaration and discharge of a dividend declared May 15, 1928, because of the difference between the cost ($1,861.11) and the declared fair market value ($167,500) as of the date of distribution of 1,675 shares of the capital stock of the Steamship Jefferson Myers, Inc., transferred to the China Pacific Co. as a dividend on May 16, 1928.

In the report heretofore promulgated it was held as follows with respect to the first issue: " The first error assigned is not discussed in the brief for the petitioner, though no statement that it is abandoned is made therein. · The record shows that S. P. Fleming, who was secretary-treasurer of petitioner, requested permission to file separate returns for the taxable year 1928 in view of the fact that the China Pacific Co. was in process of liquidation and had filed notice of dissolution with the Commissioner of Corporations for the State of Oregon. The permission was granted by the Commissioner after the petitioner complied with the provisions of article 632 of Regulations 69, to which its attention was directed.

" On March 14, 1929, the petitioner, the Asiatic-American Steamship Co. and the China Pacific Co. filed separate returns, indicating on the returns or attached thereto the information that the Commissioner had granted permission for so doing, section 142 (a) of the Revenue Act of 1928 authorizing the granting of such permission by the Commissioner. Where a separate return is filed by one member of an affiliated group pursuant to the election afforded in the revenue act, the remaining members of the group may not file

a consolidated return and all members of the group are thereby forced to file returns and compute tax liabilities on a separate basis. *Duke Power Co.* v. *Commissioner*, 44 Fed. (2d) 543; *Fontana Union Water Co.*, 24 B.T.A. 1045; *Apartment Corp.*, 17 B.T.A. 876.

" The returns having been filed and accepted by the Commissioner, he was at liberty to proceed to examine and audit them and to reject or refuse to receive amended returns, consolidated or otherwise. Such under the statute was within his power and discretion. *United States* v. *Blair*, 293 Fed. 846; certiorari denied, 264 U.S. 587; *Rose* v. *Grant*, 39 Fed. (2d) 340; *Brownsville Ice & Storage Co.*, 18 B.T.A. 439; *Pine Ridge Coal Co.*, 23 B.T.A. 489.

" Under the facts and circumstances, fully set forth in our findings of fact, we are of the opinion and so hold that the petitioner, the Asiatic-American Steamship Co. and the China Pacific Co. having filed separate returns for the year 1928, which were accepted by the Commissioner as properly filed, the Commissioner committed no error in refusing to accept from the petitioner a consolidated return for the period in 1928 during which those companies were affiliated."

Upon reference to the Board the prior opinion, in so far as it deals with the first issue, as set out above, is affirmed.

The second issue is whether petitioner realized income through the declaration and payment of a dividend in the capital stock of Steamship Jefferson Myers, Inc. The cost of the stock to petitioner was $1,861.11 and the par value $167,500. Respondent has treated par value as also being fair market value and there is no evidence to show error in this respect. The difference of $165,638.89 between cost and fair market value the respondent has included in income on the theory that upon the declaration of the dividend on May 15, 1928, petitioner incurred a liability to its stockholders in a definite amount and that the partial discharge thereof by transferring property costing less than the value at which it was transferred to the stockholders constituted income. In the prior report the respondent's action in this respect was sustained. Upon consideration by the Board we are unable to see any substantial distinction between the facts in this case and those in *General Utilities & Operating Co.*, 29 B.T.A. 934. In that case, upon consideration of the dividend resolution, we reached the conclusion that it imposed upon the corporation only an obligation to distribute in kind, that it was discharged in that way, and that, upon authority of the decided cases, no gain or loss resulted to the corporation. The cases dealing with this question are reviewed at length in the opinion in that case and no useful purpose would be served in again setting them out here. In this case we conclude that the intent of the directors of petitioner as expressed in the resolution of May 15, 1928, was to declare a dividend payable to the

extent of $167,500 in stock of Steamship Jefferson Myers, Inc., and that the dividend was paid in that way, and, following *General Utilities & Operating Co.*, *supra*, petitioner realized no taxable gain.

Reviewed by the Board.

*Decision will be entered under Rule 50.*

---

SEAWELL, dissenting: I disagree with the conclusion reached on the second issue.

When petitioner's board of directors resolved, as it did, that " $619,760.00 be and it is appropriated and set aside from the surplus profits of the company for the payment of a ten hundred sixteen percent (1,016%) dividend upon its outstanding capital stock," it created a liability of itself to its sole stockholder in the sum of $619,760. *W. E. Caldwell Co.*, 6 B.T.A. 47. When petitioner discharged that liability, under a further resolution of its directors and the consent and acquiescence of the stockholder, by the transfer to the stockholder of assets of the petitioner at a valuation equal to the liability, as it did, petitioner received income in an amount equal to the difference between the cost of those assets to petitioner and the liability so discharged. *Callanan Road Improvement Co.*, 12 B.T.A. 1109; *Bacon-McMillan Veneer Co.*, 20 B.T.A. 556. If a dividend in kind was intended there is no apparent reason to mention the amount of the dividend in dollars or the percentage of the capital stock, for neither was involved.

BLACK, STERNHAGEN, and ADAMS agree with this dissent.