INTERSTATE TEL. CO. *v.* BALTIMORE & O. TEL. CO. OF BALTIMORE
COUNTY *et al.*

(*Circuit Court, D. Maryland.* June 8, 1892.)

INSOLVENCY OF AGENT—LIABILITY OF PRINCIPAL TO THIRD PARTIES.

The B. & O. R. R. Co., having power to transact a general telegraph business, and being the owner of an extensive telegraph system, caused the Telegraph Company of Baltimore County to be incorporated with a small capital, and in its name made a contract with the complainant. For breach of that contract the complainant recovered judgment against the Telegraph Company of Baltimore County. The B. & O. R. R. Co. sold out its whole telegraph system to the Western Union Telegraph Company, and the Telegraph Company of Baltimore County was left without assets of any kind, and became insolvent. *Held*, that as the railroad company was the sole stockholder of the Telegraph Company of Baltimore County, and appointed its officers, and held it out as having authority to contract with regard to the whole system owned by the railroad company, the Telegraph Company of Baltimore County was a mere agent of the railroad company, a mere name, in fact, under which the railroad company conducted its telegraph business, and that, under the circumstances of this case, a court of equity had jurisdiction to decree that the railroad company, as principal, should pay complainant's judgment against its agent, from which it had taken all the property which it had represented that its agent controlled.

(*Syllabus by the Court.*)

In Equity. Creditors' bill. Decree for complainant.

*Morrison, Munnikhuysen & Bond,* for plaintiff.

*J. K. Cowen* and *Charles J. M. Gwinn,* for defendants.

MORRIS, District Judge. This is a creditors' bill filed by the Interstate Telegraph Company seeking, in equity, to obtain payment of a judgment against the Baltimore & Ohio Telegraph Company of Baltimore County for $25,133.75, which it recovered on the law side of this court, April 19, 1890, and execution upon which has been returned *nulla bona.*

The judgment was recovered for damages sustained by the complainant company for the breach of a contract which it had made with the Baltimore & Ohio Telegraph Company of Baltimore County, dated December 15, 1885, and a supplemental agreement, dated November 30, 1886, by which contracts the Interstate Telegraph Company agreed to build, equip, operate, and maintain certain lines of telegraph in Michigan and Ohio, in consideration of an agreement for an exclusive interchange of telegraph business with the general telegraph system connecting the various leading cities of the United States, which the Baltimore & Ohio Telegraph Company of Baltimore County was at the dates of said agreements stated therein to be engaged in operating and extending. It appears from the testimony and from the admissions of the pleadings that about 1877 the Baltimore & Ohio Railroad Company, having a system of telegraph poles and wires located along its railroads and maintained for use in its railroad business, began extending its telegraph system for general commercial telegraphing, and that in 1882, by act of the Maryland legislature, (Act 1882, c. 231,) it obtained au-

thority to do a general telegraph business; that the railroad company, on September 30, 1884, owned 6,886 miles of poles, and 47,417 miles of wire; that the Baltimore & Ohio Telegraph Company of Baltimore County was incorporated with a capital of $100,000, November 2, 1885, by seven corporators, but that all the capital stock was subscribed by the Baltimore & Ohio Railroad Company, and always belonged exclusively to it until November 2, 1887, and the corporators and officers of said telegraph company were employes of the railroad company, and appointed by it. It appears, in fact, that the said telegraph company was but a department or bureau of the Baltimore & Ohio Railroad Company, and an agent in the name of which it made the contracts for extending its system and operating its telegraph lines. It appears that there was an expectation that the Baltimore & Ohio Telegraph Company of Baltimore County would acquire defined rights of property in the system thus built up by the Baltimore & Ohio Railroad Company, and would pay for it by the delivery to the railroad company of bonds to the amount of $6,000,000, secured by mortgage of the property to be acquired by the telegraph company, but this expectation was never carried into effect.

It appears that in October, 1887, the telegraph system thus owned and controlled was of the value of $8,000,000, as stated in the answer of the Baltimore & Ohio Railroad Company; that on October 15, 1887, the Baltimore & Ohio Railroad Company entered into an agreement with the Western Union Telegraph Company to transfer to it all said telegraph property, rights, and franchises for $5,000,000 of the stock of the Western Union Telegraph Company, and the payment by it to the Baltimore & Ohio Railroad Company of the sum of $60,000 a year for 50 years; the Western Union Telegraph Company also agreeing to indemnify and save the railroad company from all liabilities, obligations, loss, or damage, on account of any act, default, or omission of the Western Union Telegraph Company or the Baltimore & Ohio Telegraph Company of Baltimore County, or any state or subtelegraph company theretofore owned by it or by the railroad company, or controlled by ownership of stock, lease, or otherwise. It appears that thus acquiring the whole Baltimore & Ohio telegraph system from the railroad company, the Western Union Telegraph Company was put into possession of it, and thereupon consolidated and combined it with its own system, and the Baltimore & Ohio Telegraph Company of Baltimore County was left without any property or assets of any value, and became at once insolvent and unable to perform its contracts or pay its debts. The complainant prays that the Baltimore & Ohio Railroad Company may be decreed to be made liable for the debts and contracts of the Baltimore & Ohio Telegraph Company of Baltimore County, entered into by it as the agent of the railroad company between November 2, 1885, and October 15, 1887, or that the said railroad company be decreed to hold the funds arising from the sale by it of property of the Baltimore & Ohio Telegraph Company of Baltimore County in trust for all the creditors of said telegraph company who became such by virtue of contracts

made prior to said sale, and that a receiver of said telegraph company be appointed.

The two grounds of defense most strongly urged on behalf of the Baltimore & Ohio Railroad Company are (1) that the chattel property sold and transferred to the Western Union Telegraph Company was its own property, and never was the property of the Baltimore & Ohio Telegraph Company of Baltimore County; (2) that, if it be conceded that the Baltimore & Ohio Telegraph Company of Baltimore County was its agent in making the contract upon which the complainant recovered its judgment, the complainant, having elected to sue, and having obtained judgment at law against the agent, cannot now in this suit sue the principal. In answer to the first defense, it is quite evident from the contract of December 15, 1885, which was the cause of action upon which the judgment was recovered, that the Baltimore & Ohio Telegraph Company of Baltimore County was held out as having the fullest control and power to contract with regard to all the telegraph lines of the Baltimore & Ohio telegraph system. By the contract itself, it was expressly stipulated that these lines should be considered to include all the territory of the United States (except that portion to be covered by the lines agreed to be built by the Interstate Telegraph Company itself) during the five years for which the business connection was to continue; and it was expressly agreed that, if during that time the ownership or control of the lines of the Baltimore & Ohio system should be transferred to any other company, provision for the protection of the interests of the Interstate Company should be made.

The contract was signed by D. H. Bates, as president and general manager of the Baltimore & Ohio Telegraph Company of Baltimore County, but Mr. Bates states that he was employed and paid by the Baltimore & Ohio Railroad Company to manage its general telegraph business, and that, although nominally its president, he has no knowledge of there ever having been any meeting of any persons claiming to be directors or officers of the Baltimore & Ohio Telegraph Company of Baltimore County. Upon this state of facts it is evident that, the Baltimore & Ohio Railroad Company having, in the name of its agent, made the contract in December, 1885, to continue for five years, it did, in October, 1887, put it out of its own power, and out of the power of its agent, to perform the contract by selling out the whole telegraph system controlled by it to another corporation, which absorbed it; no provision having been made for the protection of complainant's interests, as had been stipulated for. The agent was thus stripped of all the telegraph property and rights constituting, as was stated in the contract, "a general telegraph system connecting the various leading cities of the United States," and which the answer of the railroad company avers was of the value of $8,000,000, and as to which the contract assumed that the agent had the right to make a contract which established a connection to continue for five years. The railroad received the price of the property, and left those who had contracted with its agent to seek such remedy as they could discover.

It is clear that it was for the benefit of the railroad company, which was the actual owner of the whole telegraph system, that the contract with the complainant was made, and that the railroad company was liable on the contract as principal, and it does not appear that the facts present a case to which, in a creditors' suit in equity, the general common-law rule is applicable, by which a creditor who has sued and obtained judgment against an agent is held to be deprived of the right to proceed against the principal. Even at law, it may be doubted whether the rule is as firmly settled as it is sometimes stated. In *Maple* v. *Railroad Co.*, 40 Ohio St. 313, the court said:

"BRAMWELL, in his decision in *Priestly* v. *Fernie*, 3 Hurl. & C. 977, places his decision upon the additional consideration that the judgment against the agent altered the situation of the principal. We are also cited to Whart. Ag. § 473. The author cites *Priestly* v. *Fernie*, but adds: 'There is much reason for the position that the mere taking of judgment against the agent, under such circumstances, should not, when the judgment is unsatisfied, extinguish the debt.'"

It would certainly seem that in equity, to be binding, such an election should be made with full knowledge of the relationship between the parties. In this case the relationship between the railroad company and the Baltimore & Ohio Telegraph Company of Baltimore County was so obscured by plans and expectations which were never carried out, by the operation in the telegraph company's name of a wide-spread and rapidly extending telegraph system which did not belong to it, although the railroad company held the telegraph company out as controlling it, and by the statements in the railroad company's published reports with regard to telegraph arrangements between the two companies, which were only in progress, and never were consummated, that it was impossible to discover just what that relationship was, especially after the telegraph company was practically obliterated by the action of the railroad company.

Before the sale to the Western Union Company the railroad company asserts that the Baltimore & Ohio Telegraph Company of Baltimore County was solvent, and able to pay its debts and obligations; and it appears that, by that sale, the proceeds of which the railroad company received, it was stripped of its property and agency, and was left powerless to fulfill the contracts made in its name. Whether the railroad company and the Telegraph Company of Baltimore County are to be considered in this litigation principal and agent, or the railroad company as the sole stockholder of a corporation of which it was also creditor, in any case the transaction, in so far as it deprived the complainant in this case of the payment of its claim, was inequitable, and the means by which the result was effected were such as to give jurisdiction in equity, and to require the interposition of the court to grant relief by decreeing the railroad company liable for the debt. The judgment against the telegraph company might be held not to settle the rights of the complainant against the railroad company if the railroad company had not intervened or participated in any way in the defense of the action in which

the judgment was obtained; but that defense is not raised by the answer, and quite possibly could not be made. In my opinion, the complainant is entitled to a decree against the Baltimore & Ohio Railroad Company for the amount of its judgment.