## APPEAL OF MORGAN J. McMICHAEL.

### Docket No. 2221.   Decided July 20, 1926.

The basis for determining gain or loss on the sale of stock of an insurance company which had originally been doing business as a mutual company, is the cost and not the value when acquired in 1914, regardless of what factors enter into the value.

*Kenneth Taylor, Esq.*, for the petitioner.
*John D. Foley, Esq.*, for the Commissioner.

Before GRAUPNER,[1] TRAMMELL, and PHILLIPS.

This is an appeal from the determination of deficiencies in income tax of $15,013.13 for 1918, and $347.91 for 1919, with an overassessment of $4,151.04 for 1917. The deficiencies result from the refusal of the Commissioner to accept the March 1, 1913, value of stock determined and used by the taxpayer as the basis for determining gain on the sale thereof.

### FINDINGS OF FACT.

The taxpayer is an individual residing at Minneapolis, Minn. Prior to 1908 he had been engaged in the life, accident and casualty insurance business in Iowa and Minnesota and, largely as the result of his personal acquaintance, had built up a well-organized agency force. In 1908 the taxpayer, with George W. Curtiss and E. S. Warner, organized the Merchants Life and Casualty Co., a Minnesota mutual insurance company, for the purpose of writing accident and health insurance, principally in Minnesota and Iowa. The taxpayer became president of this company upon its organization and continued to act as such through 1917. When the company was

---

[1] This decision was prepared during Mr. Graupner's term of office.

first organized the taxpayer received a small salary and he and his two associates used their own funds in building up the company. Forty-four thousand dollars was thus advanced prior to 1913, of which amount the taxpayer advanced $22,000.

At the end of 1912 the company had 12,041 policyholders and a surplus of $43,924.26. Thereafter the number of policyholders remained substantially stationary. At the end of 1913 the surplus had increased to $63,016.48.

On February 2, 1914, the charter of the Merchants Life and Casualty Co., with the approval of the Insurance Commissioner of Minnesota, was amended to make it a stock company. Under the laws of Minnesota a stock insurance company must have a paid-in capital of at least $100,000 and securities of the value of $100,000 must be deposited with the Insurance Commissioner. The company complied with this requirement. In 1914, 2,000 shares of stock of the par value of $50 were issued. This stock was issued to the original organizers of the company, who paid $50 per share in cash, the taxpayer purchasing 984 shares, George W. Curtiss 492 shares, and E. S. Warner 492 shares. The remaining 32 shares were purchased at par and issued as qualifying shares to directors.

After the charter had been amended and stock had been sold, the company had a paid-in capital and surplus of $163,016.48 and about 12,000 policyholders. The company then operated as a stock company, with the taxpayer as president. In October, 1917, taxpayer entered into a contract to sell all of the capital stock of the Merchants Life and Casualty Co. for $235,000. After this sale was arranged, the taxpayer acquired the stock of the other stockholders and delivered all the outstanding stock to the purchaser in fulfillment of the sales contract. The payments were made in three installments of $35,000 in 1917, $150,316.66 in 1918, and $49,683.34 in 1919.

The Commissioner determined that the 984 shares acquired in 1914 cost the taxpayer $69,700 and determined the gain upon that basis. The cost of the 984 shares of stock issued to the taxpayer in 1914 was $69,700, of which $47,000 was paid in 1914, and $22,000 represents advances to the old mutual company.

OPINION.

TRAMMELL: This appeal raises the question of the taxpayers' gain in 1917, 1918 and 1919 from the sale of stock of the Merchants Life and Casualty Co. in 1917. The taxpayer contends that the stock was worth at least as much on March 1, 1913, as it was sold for in 1917, and that no income arose out of the transaction.

The Commissioner contends that the basis for determining gain is the cost of the stock to the taxpayer. The Merchants Life and

Casualty Co. was organized under the laws of Minnesota in 1908 as a mutual insurance company. The taxpayer, with others, was active in the organization and operation of the mutual company, and at the end of 1912 the company had 12,041 policyholders and a surplus of $43,924.26. At the end of 1913 the number of these policyholders was about the same and its surplus had increased to $63,016.28. On February 2, 1914, the mutual company was changed to a stock company under section 3510 of the General Statutes of Minnesota, 1913. The capitalization of the stock company was 2,000 shares of the par value of $50 each. Nine hundred and eighty-four shares were acquired by taxpayer at a cost of $69,700, $47,700 of which was paid in cash in 1914, and $22,000 of which was money which the taxpayer had advanced to the old mutual company.

The taxpayer, before the sale of the stock, acquired all the stock of the company held by others and included it all in the sale. The cost of the stock, other than that originally acquired in 1914 on the organization of the stock company, is not in issue and we have no evidence with respect thereto.

The taxpayer contends that the fair market value of the stock acquired in 1914 was at least $117.50 per share, that the excess of the market value over cost represented compensation to him for his services to the company prior to 1914 and that, in any event, the March 1, 1913, value was equal to the selling price and that the taxpayer realized no taxable gain or profit in 1917 or subsequent years in connection with the sale of the stock which was issued to him in 1914.

Since the stock company did not come into existence until after March 1, 1913, it is clear that the stock could not have a March 1, 1913, value which could be used as the basis for determining the gain on a subsequent sale thereof. The taxpayer takes the position that the stock was worth more than the cost above mentioned because of the surplus with which the stock company started business. Admitting the surplus to be established, it does not follow that such value increases the cost of the stock. The cost of the stock and the value may be entirely different. As to whether a portion of the value was allowed the taxpayer by the corporation as compensation for services, that is a question of fact. A corporation may and frequently does issue stock for services rendered, or partly for cash and partly for services. In this case any services performed by the taxpayer were rendered to the mutual company before the stock corporation was organized. The assets and liabilities of that company became the assets and liabilities of the stock company. If there was a liability on the part of the mutual company to pay for any services rendered by the taxpayer, such liability followed the assets. The stock company was created merely by an

amendment of the charter of the existing mutual company. But we have no evidence of any liability having been set up by the mutual company or the stock company for such services, nor have we any evidence that any liability was canceled by the issuance of stock. The taxpayer has not shown that the corporation was under any legal or moral obligation to pay for any service which he performed. If a portion of the stock thereof was issued for services it is not shown by any corporate act and is not reflected on any of the corporate records. We are unable to reach the conclusion that the stock, or any part thereof, was issued for services of the taxpayer.

The taxpayer doubtless acquired the stock of the corporation at less than its value, but no gain or loss results from buying an article at less than its value until it is realized by sale or other disposition. The taxpayer owned none of the stock prior to March 1, 1913, and as a consequence, the only basis for determining gain or loss on the sale of the stock is cost. Both the cost and the selling price are set out in the findings of fact. The Commissioner determined the taxable gain on the installment basis in proportion as the selling price for the stock was paid, and this method of computation is not in question in this appeal. The initial payment was less than 25 per cent.

> *Order of redetermination will be entered on*
> *15 days' notice, under Rule 50.*