GEORGE W. VAN VORST, EXECUTOR OF THE ESTATE OF C. B. VAN VORST, DECEASED, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 43567. Promulgated March 9, 1931.

*George H. Koster, Esq.,* and *Claude I. Parker, Esq.,* for the petitioner.
*M. B. Leming, Esq.,* for the respondent.

OPINION.

MURDOCK: The Commissioner determined a deficiency of $26,720.79 in the decedent's income tax liability for the year 1924. The petitioner alleges that the Commissioner erred in including in the gross income of the decedent the difference between the fair market value of the property purchased by him in that year and the amount he paid for it.

The petitioner is the executor of the estate of C. B. Van Vorst, deceased, and has his principal office in Los Angeles, Calif. In 1924 C. B. Van Vorst was the president of the C. B. Van Vorst Company.

The Commissioner stated in his deficiency notice, *inter alia,* that the transaction here in question " represented a distribution of corporate earnings and, therefore, the difference between the amount paid for the property and the amount of its fair market value is taxable as a dividend. (See decision in the case of F. E. Taplin, Board of Tax Appeals Reports, Volume 12, Number 8, page 1264)." He then added to the petitioner's net income, as reported, additional dividends of $100,000 and deducted a like amount in computing the

amount subject to normal tax. Counsel for the parties filed a stipulation as follows:

It is stipulated between the counsel for the respective parties, that on August 6, 1924, C. B. Van Vorst, now deceased, and whose Estate is now represented by his Executor, George W. Van Vorst as petitioner herein, purchased from the C. B. Van Vorst Company, a Corporation organized under the general corporation laws of the State of California in 1904, four certain parcels of real estate for a total sum of $54,559.60; that the said C. B. Van Vorst paid the full amount of said purchase price, namely, $54,559.60, in cash to the said Corporation, and that the said corporation thereupon conveyed the said real estate to the said C. B. Van Vorst by appropriate deeds of conveyance. It is also stipulated that the aforesaid real estate had been acquired by the Corporation at a cost to it of $54,559.60.

It is further stipulated that at the time of the purchase of the said real estate by said C. B. Van Vorst from the said Corporation, the fair market value of the same was $154,559.60.

It is further stipulated that the said C. B. Van Vorst was the owner of 46,397 shares of the capital stock of the C. B. Van Vorst Company at the time the said real estate was purchased by him as aforesaid, and that the total outstanding capital stock of the Corporation on the same date was 50,000 shares of a par value of $1.00 per share.

It is further stipulated that on March 26, 1924, the C. B. Van Vorst Company paid a cash dividend of $10,000.00 and that on July 1st, 1924, it paid a further cash dividend of $10,000.00; that at the time these dividends were paid the total outstanding capital stock of the said corporation was 50,000 shares of a par value of $1.00 per share.

It is further stipulated that two of the aforesaid parcels of real estate were purchased by the said C. B. Van Vorst Company in the year 1914, and the other two parcels were purchased by the said Corporation in the year 1923, and that the cost of all of this property to the corporation, namely, $54,559.60, includes the purchase price of the said properties plus improvements to the date of the sale of the same to the said C. B. Van Vorst and is the cost as shown by the said corporation's books.

Counsel for the parties also offered in evidence, as joint exhibits, the corporation income tax return of C. B. Van Vorst Company for the calendar year 1924, the capital stock tax return of that company for the year 1924, and the deficiency notice. The stipulation and the three exhibits were received in evidence. It is apparent from these exhibits, among other things, that the corporation reported net income for the calendar year 1924 of almost $23,000; its surplus and undivided profits at the close of the preceding year amounted to $357,679.23; its surplus and undivided profits at the close of the taxable year, after adding net profits and after deducting dividends paid of $20,000, amounted to $352,166.33; and it paid a dividend of 10 per cent in 1918, no dividends in 1919 and 1920, a dividend of 20 per cent in 1921, and a dividend of 20 per cent in 1922, during all of which years its capital stock consisted of 50,000 shares each of the par value of $1.

In Treasury Decision 3435 (under the Revenue Act of 1921) and in article 31 of Regulations 65 (under the Revenue Act of 1924) the Commissioner has ruled that a shareholder who purchases property from the corporation at a price substantially less than its fair market value shall include such difference in his gross income and the fair market value shall be deemed its cost for purposes of computing gain or loss from subsequent sale. He has been more specific in this case and has taxed the difference in question as a dividend—has in effect determined that the decedent received a distribution of the earnings or profits of the corporation accumulated since February 28, 1913, within the meaning of section 201 of the Revenue Act of 1924. It was then up to the petitioner to show that there was no taxable dividend. The Commissioner has never made any contention in this case that the transaction lacked bona fides or was a liquidation.

The rule laid down in article 31 of Regulations 65 apparently is intended to interpret either section 213 (a) or section 201 (a) of the Revenue Act of 1924, but it is too broad for this purpose. In neither section is there any specific reference to such transactions as are covered by the provision of the article above referred to. By its terms it would cover situations which may easily be imagined in which the stockholder purchaser would clearly have received no taxable income from the purchase. Under some circumstances a stockholder may be charged with the receipt of income from a transaction which has the form of a purchase (cf. *Continental Insurance Co.* v. *United States*, 259 U. S. 156), but normally income does not result from a purchase even though a great bargain is obtained. *Morgan J. McMichael*, 4 B. T. A. 266; *W. L. Dunn*, 14 B. T. A. 13; *Rose* v. *Trust Co. of Georgia*, 28 Fed. (2d) 767. If a dividend in a certain amount has been declared and is discharged by transferring property at less than its fair market value, a taxable distribution of earnings or profits could result and the corporation could realize a gain or loss on the disposition of its property. *Callanan Road Improvement Co.*, 12 B. T. A. 1109; *Parkersburg Iron & Steel Co.*, 17 B. T. A. 74; *First Utah Savings Bank*, 17 B. T. A. 804; *Bacon-McMillan Veneer Co.*, 20 B. T. A. 556. A taxable distribution may be made without the formal declaration of a dividend. Furthermore, a dividend need not be distributed in proportion to shareholdings if the shareholders consent. But here there has been no declaration of a dividend in any certain amount, in fact no declaration of any dividend which bore any relation to this transaction, and no evidence of the stockholders consenting to a disproportionate distribution. In our opinion the stipulated facts, including the stipulation that the decedent " purchased " the property, made a prima facie case for the petitioner and it was then incumbent upon the respondent to

show that although this was in form a sale, nevertheless it occurred under circumstances which indicate that in fact it was a distribution of earnings or profits accumulated since February 28, 1913. In this connection we see no reason to infer that the stockholders ever agreed to an unequal distribution. This majority stockholder undoubtedly purchased at a bargain price and there were stockholders who did not share in the bargain. But bargain purchases do not *ipso facto* require an explanation by the purchaser to avoid tax. Proof of a prima facie case does not require the elimination of all unfavorable possibilities. The purpose of the rule of evidence is to avoid just such difficulties.

A taxable distribution within the meaning of section 201 of the Revenue Act of 1924 must be made from earnings or profits accumulated since February 28, 1913. Unearned appreciation is not a part of earnings or profits for tax purposes. Cf. *La Belle Iron Works* v. *United States*, 256 U. S. 377. A corporation realizes no profit from the sale of its property at cost and such a sale can not normally be a taxable distribution under the above section. The Commissioner has not in his turn proven facts to show that a different result followed from this sale. The Government must therefore wait until this purchaser disposes of this property at an increase over the price at which he obtained it before it collects its tax.

Reviewed by the Board.

*Judgment will be entered for the petitioner under Rule 50.*

---

PHILLIPS, dissenting: The sole question involved in this case is whether the purchase by C. B. Van Vorst (petitioner's decedent) from the C. B. Van Vorst Company of certain real estate constituted taxable income to the extent that the fair market value of the property exceeded the purchase price. It is stipulated that the property was acquired by the corporation subsequent to February 28, 1913, at a cost of $54,590.60, that it had on the day of purchase the fair market value of $154,590.60, and that it was sold to Van Vorst for a price precisely equal to cost.

The Revenue Act of 1924 imposes a tax upon net income, which is defined in section 212(a) as gross income less allowable deductions. Section 213(2) defines the term " gross income " as follows:

(2) The term " gross income " includes gains, profits, and income derived from salaries, wages, or compensation for personal service * * * of whatever kind and in whatever form paid, or from professions, vocations, trades, businesses, commerce, or sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property; also from interest, rent, dividends, securities, or the transaction of any business

carried on for gain or profit, or gains or profits and income derived from any source whatever. The amount of all such items shall be included in the gross income for the taxable year in which received by the taxpayer, unless, under methods of accounting permitted under subdivision (b) of section 212, any such amounts are to be properly accounted for as of a different period.

Commenting on this definition, the Supreme Court in *Eisner* v. *Macomber*, 252 U. S. 189, said: "Here we have the essential matter, *not* a gain *accruing* to capital; not a *growth* or *increment* of value *in* the investment; but a gain, a profit, something of exchangeable value, *proceeding from* the property, *severed from* the capital, however invested or employed, and *coming in*, being *derived*—that is, *received or drawn by* the recipient for his *separate* use, benefit and disposal—that is income derived from property."

The stipulation in the present case leaves no doubt that the petitioner received from the corporation property having a fair market value of $100,000 in excess of the price paid by him for it. Ordinarily a purchase of property gives rise to neither gain nor loss, no matter how good may be the bargain. But the situation presented by the facts before us is not ordinary. The income arises not because petitioner has a bargain, but because a corporation in which he is a stockholder has distributed a part of its assets in the form of a sale. That a transaction in form a sale may be a distribution of surplus was expressly held in *Continental Insurance Co.* v. *United States*, 259 U. S. 156, where the Court said:

We come now to the issue upon which these appeals were brought here. It concerns the respective rights of the common stockholders and the preferred stockholders in the assets of the Reading Company. They all, under the plan, will receive the benefit of the difference between the real value of the privilege of disposing of their distributive certificates of interest in stock in the new Coal Company, and the payment of $2.00 or such other sum as may be fixed, per share held by them of the Reading Company stock. Such difference has already been the subject of sale and quotation on the market in New York and has varied from $11 to $20. This might have been expected in view of the disparity between par of the capital stock of the Reading Coal Company and the far greater actual value of its properties. The disparity shows that while the transfer of certificates of interest in the new Coal Company stock is *denominated a sale, it is only a distribution of the surplus or assets of the Reading Company to its stockholders made necessary by the decree of this court in taking the Reading Company out of the coal business* and restricting it to that of owning and operating a railroad system.

    *         *         *         *         *         *         *

The distribution of certificates of interest in the new Coal Company shares was evidently given the form of a sale to enable the new Reading Company to realize out of it $5,600,000 in cash to give it additional working capital enough properly to operate the Reading Railway System. But this does not change its real nature as a mere distribution of forbidden assets in kind to stockholders. (Italics supplied.)

See also *Metcalf's Estate* v. *Commissioner*, 32 Fed. (2d) 192.

It has repeatedly been held that dividends paid by a corporation in property other than its own stock are income (*Peabody* v. *Eisner*, 247 U. S. 347) and that profits distributed in property in partial or complete liquidation are subject to the tax. It would seem to make no difference in principle whether property is distributed to stockholders without any payment being made by them or whether they pay for such property an amount which is unquestionably much less than the market value of the property received.

It is obvious that decedent's favorable purchase was a substantial fruit of his ownership of stock in the corporation. Cf. *Rockefeller* v. *United States*, 257 U. S. 176. It was a benefit growing out of his investment, for there is no reason to suppose that any corporation will sell property to a stranger at one-third of its market value. Having regard to the substance rather than the form (*Western Maryland Ry. Co.* v. *Commissioner*, 33 Fed. (2d) 695 and cases cited) there is no substantial difference in so far as the stockholders are concerned between the sale of property here involved for the price of $154,559.60 and the distribution of the net proceeds of $100,000 to the decedent and the conveyance to him of the property at a price equal to cost, which clearly was a wholly inadequate consideration.

For the present I am not concerned with the question whether this was a distribution of earnings or profits of the corporation, taxable only at surtax rates, or such a receipt of income as would be taxable at both normal and surtax rates. Nor am I concerned with the question whether there was a dividend in the technical sense. In view of the large surplus, all earned subsequent to March 1, 1913, it is clear that there was no tax-exempt distribution and no liquidation. That there was in form a sale can not change the fact that there was an undisputed gain flowing from the ownership of the stock and set apart to the separate use of the stockholder. It is also clear beyond question that this was more than a situation where one purchases property at a bargain price or where there might be a difference of opinion as to whether the price was adequate. All such thoughts are eliminated by the stipulation of a market value substantially three times the price paid.

The petitioner relies principally upon the decision in *Taplin* v. *Commissioner*, 41 Fed. (2d) 454, reversing our decision in *Frank E. Taplin*, 12 B. T. A. 1264. We do not understand the decision of the Court to be that the principle urged by the Commissioner is not sound, but rather that the facts in that case negatived the determination that the transaction involved a distribution of profits. There the persons who bought the assets at their cost to the corporation had loaned the money with which the purchase was made.

The property had been acquired by the corporation for a special purpose and not for use in its business. There is no similar testimony in this case.

In petitioner's brief emphasis is placed on the question of fraud, and on the fact that all the stockholders did not participate in the purchase involved. As we view the matter, fraud is not involved. Respondent does not seek a fraud penalty. He does not charge fraud. We can not presume it. So long as creditors are not adversely affected, there is nothing illegal or fraudulent or reprehensible in such a transaction. No fraudulent act would occur unless and until the parties involved made income tax returns which failed to disclose the precise nature of the transaction. So long as creditors are protected and stockholders satisfied, a corporation may dispose of its assets as it chooses. The only question is whether such a transaction is or is not successful in distributing the property of the corporation without subjecting the recipient to tax. Respondent's case is bottomed not on the invalidity, but on the validity of the purchase. If the transaction was void or voidable, a very serious question would be presented whether there had been any income. The question is not whether the transaction was invalid, but whether, being valid, taxable income resulted. That a distribution of the property of a corporation may take the form of a sale for a valuable consideration is the decision in *Continental Insurance Co.* v. *United States, supra,* a case where no fraud was involved. See also *Botany Worsted Mills* v. *United States,* 278 U. S. 282, where the Court said with respect to an agreement between a corporation and its officers for salary of the latter:

Even if binding upon the parties, such an agreement does not change the character of the purported compensation or constitute it, as against the Government, an ordinary and necessary expense.

With reference to the contention that the minority stockholders (less than 8 per cent of the total stockholdings) did not participate in the benefits of the sale, it may be pointed out that it is laid down by eminent authorities that, where all the stockholders consent, the profits of a corporation may be divided and distributed other than rateably according to the stockholdings. 6 Fletcher on Corporations, p. 6114, sec. 3674; 14 C. J. 815; *Breslin* v. *Fries-Breslin Co.,* 70 N. J. L. 274; 58 Atl. 313; *Barnes* v. *Spencer & Barnes Co.,* 162 Mich. 509; 127 N. W. 752; *Kearneysville Creamery Co.* v. *American Creamery Co.* (W. Va.), 137 S. E. 217; *Freeman* v. *Rogers White Lime Co.,* 138 Ark. 312; 211 S. W. 146. This is but one aspect of the rule that, all the stockholders agreeing and no creditors being involved, a private corporation may dispose of its property much as it pleases. Cook on Corporations, 8th Ed., sec. 3, and cases cited. It must be

presumed that all the other stockholders with full knowledge consented or else the presumption indulged in that the decedent was guilty of bad faith.

For the reason stated, I am of the opinion that the decedent is chargeable with the receipt of income in the amount of $100,000.

MORRIS, ARUNDELL, and BLACK agree with this dissent.