Sydney M. Shoenberg, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket No. 72529.   Promulgated May 8, 1934.

*James W. Beller, Esq.*, for the petitioner.
*Nathan Gammon, Esq.*, and *W. W. Kerr, Esq.*, for the respondent.

OPINION.

Van Fossan: A deficiency of $38,877.26 for the year 1930 is here contested. In simplest terms, the question is, Did petitioner make a bona fide sale of certain securities? In the event of our affirmative decision the respondent raises a further question, Did petitioner have an option to reacquire substantially the same stocks?

The facts are not complex. Petitioner is an individual. He is also president of the Globe Investment Co., of which he owns 70 percent of the stock, the remainder being owned by petitioner's mother, an aged woman in poor health. By resolution dated May 15, 1929, the company granted petitioner authority to sell any of its property and generally to do all things necessary in connection therewith.

In December 1930 petitioner wished to establish a loss on certain stocks owned by him for the purpose of decreasing his income taxes. He instructed his broker to sell the stock at the market. At the same time he instructed the same broker to buy the same amount of the same stocks at the market for the account of the Globe Invest-

ment Co.  Pursuant to these instructions, the broker issued to petitioner notices of sales as follows:

| | |
|---|---:|
| December 5, 1930 | $204,177.50 |
| December 11, 1930 | 90,962.50 |
| December 22, 1930 | 16,612.50 |
| | 311,752.50 |

On the identical dates the broker issued to the Globe Investment Co. notices of purchases of the same quantity of the same stocks at the same prices shown above.  The Globe Investment Co. issued its checks to the order of the broker as follows:

| | |
|---|---:|
| December 6, 1930 | $204,909.35 |
| December 10, 1930 | 91,225.50 |
| December 23, 1930 | 16,665.00 |
| | 312,799.85 |

Just prior to December 5, 1930, petitioner transferred to the Globe Investment Co. a sum of approximately $120,000.

The brokers issued petitioner their checks on the days and in the amounts following:

| | |
|---|---:|
| December 8, 1930 | $130,000.00 |
| December 8, 1930 | 73,250.49 |
| December 12, 1930 | 90,666.90 |
| December 24, 1930 | 16,548.00 |
| | 310,465.39 |

On the days shown hereafter, each day being slightly more than 30 days subsequent to the original purported sale by petitioner, the petitioner, acting under his blanket authority granted by the Globe Investment Co., caused the Globe Investment Co. to transfer to himself, as an individual, all of the shares in controversy, at the market price of such shares.  Petitioner issued his checks in purported payment, as follows:

| | | | |
|---|---:|---|---:|
| January 9, 1931 | $36,250.00 | January 13, 1931 | $ 31,000.00 |
| January 9, 1931 | 46,551.37 | February 19, 1931 | 19,200.00 |
| January 10, 1931 | 21,203.00 | | |
| January 10, 1931 | 96,432.00 | | 304,593.87 |
| January 13, 1931 | 53,957.50 | | |

The variations in the several amounts in the various tabular statements are due to commissions and other adjustments.

The above transactions were consummated after petitioner discussed with an accountant the matter of reducing his taxes.

In the transactions handled by the brokers, new stock certificates were issued by the companies whose stock was involved to the Globe

Investment Co. In the transaction between petitioner and the company no new certificates were issued.

The respondent disallowed a loss claimed by the taxpayer in the amount of $191,886.30, which action is the sole error assigned.

On the basis of the above facts, taxpayer asks us to hold that he made a bona fide sale and legally established his loss. His brief is largely devoted to the argument that the corporation was a separate corporate entity and may not be disregarded.

It has been held frequently that transactions having the avowed purpose of avoiding taxes should be carefully scrutinized. The line of demarcation between what may lawfully be done and what may not be done is difficult to define or prescribe, but it is well settled that a mere ritualistic compliance with legal forms is not enough. *Harold B. Clark*, 2 B.T.A. 555; *Harold F. Seymour*, 27 B.T.A. 403; *George H. Chisholm*, 29 B.T.A. 1334; *Commissioner* v. *Gregory*, 69 Fed. (2d) 809. A sale must rest on a genuine intention to dispose of property without reservation or evasion of mind. What is in the minds of the parties is not to be determined solely by self-serving declarations or testimony of the party interested. It is pertinent to consider all the acts of the parties, the several steps employed, and all other related facts and inferences.

In this case we start with a taxpayer who possessed, to all practical purposes, as an *alter ego*, a corporation entirely dominated by him. Acting alone, as he did, under a blanket grant of authority, and absent the usual evidences of corporate action, it is difficult to distinguish between the mind of Shoenberg, the individual, and Shoenberg incorporated. We next have as a basic premise the desire to establish losses and avoid taxes. There follow the purported sale through the broker by Shoenberg, the individual, and the purported purchase by the corporation, instructions for both transactions having been given by Shoenberg simultaneously. Part of the money necessary for the payment of checks issued by the company was supplied to the company by taxpayer. We then have the transfer of the stocks from the company to the individual after the expiration of the 30-day prohibitive period and the balancing of accounts. At the start of the series of steps the taxpayer had a certain number of shares in various companies; at the close he had precisely the same number of shares in the same companies.

Viewing the entire situation, we are of the opinion that the forms and ceremonies which taxpayer employed lacked the spark of vitality essential to a bona fide sale; that there was a persisting intention to hold title; and that in the mind of the taxpayer he never really

parted with dominion over the stock. Consequently, the respondent should be sustained.

Were we incorrect in the conclusion above announced, we would find it difficult to escape the alternative conclusion that even if the steps taken were sufficient to constitute a sale, Shoenberg, the individual, possessed an option to buy the stock back from Shoenberg, the corporation, during all the time he was out of possession, which option was exercised immediately on the expiration of 30 days after the sale. The existence of such an option would bring the transaction within the provisions of section 118 of the Revenue Act of 1928.

On the record we find no error in respondent's determination.

Reviewed by the Board.

> *Decision will be entered for the respondent.*

SMITH and LEECH concur in the result.

---

TRAMMELL, dissenting: In my opinion, the taxpayer has literally met every statutory provision to entitle him to a deductible loss. I see no basis for holding that the sale was not bona fide.

---

GOODRICH, dissenting: Doubtless, for purposes of revenue production, the result reached in this case by the majority is highly desirable, but in law it is erroneous. These transactions are not " a mere ritualistic compliance with legal forms " nor " purported sales ", but are completed sales between separate legal entities, consummated through the usual business channels by an outside agency—cash paid and delivery made. To here disregard the separate existence of this individual and the corporation is to construe as a lack of bona fides—equivalent to a finding of fraud or deceit—the unconcealed intention of deliberately incurring a loss to be used to reduce income and thus avoid taxes—a course which the Supreme Court has declared to be neither morally nor legally wrong, if accomplished by steps which the law allows. It is evident that this petitioner informed himself as to the means the law permitted him to use, and by those means garnered a loss. That loss should be deducted from his income.