918

EDWARD SECURITIES CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 71208.   Promulgated June 14, 1934.

*Harry N. Wyatt, Esq.*, for the petitioner.
*Bruce A. Low, Esq.*, for the respondent.

OPINION.

McMAHON: The only issue to be considered in this proceeding is whether the respondent erred in disallowing a deduction in the sum of $15,100 representing a loss resulting from the sale in 1930 by the petitioner of 50 shares of the stock of the Sheridan Trust & Savings Bank.

The position of the respondent is, first, that the sale was not a bona fide sale, and secondly, if it were a bona fide sale, the stock was sold to an individual who was not only in control of the corporation, but owned all except two qualifying directorship shares out of a total of 9,982 outstanding shares, and, therefore, it would be contrary to the intent of Congress and public policy to allow such a deduction.

The respondent not only concedes that the sale was made, but the parties stipulated that the petitioner on December 26, 1930, " sold " the 50 shares of bank stock to E. N. D'Ancona at the then market value of such shares, or $750. Both contentions of the respondent are based primarily upon the fact that the petitioner sold the stock to its stockholder, who owned practically all of its stock, the respondent conceding that if the petitioner had sold the stock " to some stranger, it would be different." This fact by itself is not sufficient to sustain the contentions of the respondent. As stated in *Commissioner* v. *Van Vorst*, 59 Fed. (2d) 667; affirming *George W. Van Vorst, Executor*, 22 B.T.A. 632:

In the absence of other showing, the mere fact that the purchaser is a stockholder of the vending corporation does not change the character of the transaction. *Appeal of McMichael*, 4 B.T.A. 266, 269; *Fruit Belt Co.* v. *Commissioner*, 22 B.T.A. 440; *Taplin* v. *Commissioner*, (C.C.A.) 41 F. (2d) 454; *Trust Co.* v. *Rose* (C.C.A.) 28 F. (2d) 767.

In that case a stockholder who held 46,397 of the 50,000 outstanding shares of stock of a corporation purchased certain real estate from the corporation for the sum of $54,559.60, which real estate had a fair market value at the time of $143,559.60. The Board in its opinion in that case stated:

* * * In our opinion the stipulated facts, including the stipulation that the decedent " purchased " the property, made a prima facie case for the petitioner and it was then incumbent upon the respondent to show that although

this was in form a sale, nevertheless it occurred under circumstances which indicate that in fact it was a distribution of earnings or profits accumulated since February 28, 1913. In this connection we see no reason to infer that the stockholders ever agreed to an unequal distribution. This majority stockholder undoubtedly purchased at a bargain price and there were stockholders who did not share in the bargain. But bargain purchases do not *ipso facto* require an explanation by the purchaser to avoid tax. Proof of a prima facie case does not require the elimination of all unfavorable possibilities. The purpose of the rule of evidence is to avoid just such difficulties.

While the above case involves an increase or addition to the taxable income of the purchaser and the instant proceeding involves a deduction from the income of the seller, both involve dealings between corporation and stockholder. The principle in the above case, in our view, is therefore applicable here.

In *Fruit Belt Telephone Co.*, 22 B.T.A. 440, the Commissioner contended that the corporation really sold its assets to the Southern Bell Telephone Co., or in any event did not in good faith sell them to Evans and James, who owned all but one share of petitioner's stock. The Board stated:

On this question, we think the evidence is perfectly clear that the assets were sold to Evans and James and that they sold them to the Southern Bell Telephone Company. So long as neither creditor nor stockholder has any objection to the sale of assets by a corporation, clearly, a corporation is not prohibited by law from selling to its stockholders even at a price less than the value of the assets and there is nothing to prevent a corporation from distributing its assets to its stockholders in liquidation if it desires to do so regardless of the value of the assets distributed. A corporation may clearly do what it has a legal right to do, even for the sole purpose of reducing its tax liability. It is not required to pursue a course which gives rise to a greater tax liability if another course is open to it which will give rise to a less tax liability.

See also *David Stewart*, 17 B.T.A. 604; *Corrado & Galiardi, Inc.*, 22 B.T.A. 847; and *Budd* v. *Commissioner*, 43 Fed. (2d) 509. In the first case just cited, we said:

Ordinarily, where an individual sells securities to a corporation at less than the cost of the securities, the sale establishes the amount of the individual's loss for income-tax purposes. It has been shown in this case that the petitioner sold his securities to a corporation for less than those securities cost him. Why then should he not have a deduction for a loss? * * * The petitioner admitted that he did what he did in order to take a loss on his income-tax return, but of course it is not reprehensible to take lawful steps which will entitle one to a loss on one's income-tax return. It may well be that the petitioner was in a position, due to his control of the corporation, to commit a fraud on the Government in order to take an unsustained loss on securities, but there is no evidence to indicate that any of his acts lack genuineness. * * *

As heretofore set forth, the sale involved in the instant proceeding was at the market price.

So far as the record discloses, the position of the respondent that the sale was not bona fide was first stated at the hearing. In *Corrado & Galiardi, Inc., supra,* the Board said: " The respondent's brief states that the sole question is whether or not there was a bona fide sale. Bona fide means, with good faith; without fraud or deceit. Fraud is not to be presumed." That case also involved a sale of stock, without clear proof of its market value, by a corporate taxpayer to two of its stockholders, who, with their families, owned all the stock of the taxpayer.

In *Budd* v. *Commissioner, supra,* the court stated:

* * * It is a general principle that fraud is never to be presumed, and he who avers it, takes upon himself the burden of proving it. * * * The determination of the Commissioner being presumptively correct, in appealing from the additional assessment, Mr. Budd was required to prove a sale, transfer of title, a valuable consideration, and the other positive elements upon which he relied. This he did, and this must stand unless the sale was a pretense and a fraud. * * * The Commissioner made no attempt to prove fraud, but relied upon Mr. Budd to negative the charge of fraud. But fraud cannot be inferred by the court or jury from acts, legal to themselves and consistent with an honest purpose. * * *

The burden was, therefore, on the Commissioner to bear the burden of proving his charge of fraud that the sale was not bona fide.

Nor can the separate identity of the petitioner and its stockholder purchaser, under the circumstances of this proceeding, be disregarded. Under the general rule for tax purposes a corporation is an entity distinct from its stockholders. *Dalton* v. *Bowers,* 287 U.S. 404.

This principle is stated by the United States Supreme Court in *Burnet* v. *Clark,* 287 U.S. 410, as follows:

A corporation and its stockholders are generally to be treated as separate entities. Only under exceptional circumstances—not present here—can the difference be disregarded.

The mere fact that the stock of the petitioner was owned by the purchaser is not such an unusual circumstance as to require disregard of its corporate form in the transaction involved herein. In *Burnet* v. *Commonwealth Improvement Co.,* 287 U.S. 415, the taxpayer had deducted a loss on its 1920 income tax return resulting from the transfer of certain shares to the Widener Estate, its sole stockholder. The Commissioner changed the basis thereof, thereby establishing a profit and a deficiency in tax. It was thereupon contended by the taxpayer that the transaction resulted in no gain or loss, since, practically considered, the taxpayer and the Widener Estate were the same entity. The Court, in disposing of that contention, stated:

While unusual cases may require disregard of corporate form, we think the record here fails to disclose any circumstances sufficient to support the petitioner's [taxpayer's] claim. Certainly, the Improvement Company and the Estate were separate and distinct entities; the former avowedly utilized to bring about a change in ownership beneficial to the latter. For years they were

recognized and treated as different things and taxed accordingly upon separate returns. The situation is not materially different from the not infrequent one where a corporation is controlled by a single stockholder. See *Eisner* v. *Macomber*, 252 U.S. 189, 208, 209; *Lynch* v. *Hornby*, 247 U.S. 339, 341; *United States* v. *Phellis*, 257 U.S. 156, 172, 173.

The result reached in the instant proceeding is adequately supported by *Jones* v. *Commissioner*, 71 Fed. (2d) 214. See that case for the discussion and authorities cited, which are persuasive. See also *New Colonial Ice Co.* v. *Helvering*, 292 U.S. 435, and *Joseph Cavedon*, 30 B.T.A. 364.

In support of his contention that the corporate form of the petitioner should be disregarded, the respondent cities as leading authorities *Southern Pacific Co.* v. *Lowe*, 247 U.S. 330, and *Gulf Oil Corp.* v. *Lewellyn*, 248 U.S. 71. The United States Supreme Court, in *Burnet* v. *Commonwealth Improvement Co.*, *supra*, with respect to these two cases, stated as follows:

> *Southern Pacific Co.* v. *Lowe*, supra, and *Gulf Oil Corp.* v. *Lewellyn*, supra (the latter covered in principal by the first), *cannot be regarded as laying down any general rule authorizing disregard of corporate entity in respect of taxation*. These cases presented peculiar situations and were determined upon consideration of them. In the former this court said: "The case turns upon its very peculiar facts, and is distinguishable from others in which the question of the identity of a controlling stockholder with his corporation has been raised. *Pullman Car Co.* v. *Missouri Pacific Ry. Co.*, 115 U.S. 587; *Peterson* v. *Chicago, Rock Island & Pacific Ry. Co.*, 205 U.S. 364, 391. * * *" [Emphasis supplied.]

We have not overlooked *Helvering* v. *Gregory*, 69 Fed. (2d) 809, which reverses *Evelyn F. Gregory*, 27 B.T.A. 223, on another ground, or *Sydney M. Shoenberg*, 30 B.T.A. 659. There is nothing in any of the reports of these cases which suggests a departure from the applicable doctrine of the decisions of the Supreme Court of the United States upon which we rely here; and if there were we could not agree with its application to the facts presented in the instant proceeding. The principal issue decided by the court in *Helvering* v. *Gregory*, *supra*, was whether under the facts in that case there was a "reorganization" within section 112 (i) (1) (B) of the Revenue Act of 1928, bringing the taxpayer within section 112 (g) of the same act so that her gain could not be "recognized" because certain corporate shares were "distributed in pursuance of a plan of reorganization." No such issue is presented in the instant proceeding. Furthermore, while the court reversed the Board upon this issue, it approved the Board's holding that the separate entity of the corporation should not be disregarded, and in doing so stated:

> * * * we cannot treat as inoperative the transfer of the Monitor shares by the United Mortgage Corporation, the issue by the Averill Corporation of its own shares to the taxpayer, and her acquisition of the Monitor shares

by winding up that company. The Averill Corporation had a *juristic personality*, whatever the purpose of its organization; the transfer passed title to the Monitor shares and the taxpayer became a shareholder in the transferee. All these steps were *real*, and their only defect was that they were not what the statute means by a "reorganization", * * * [Emphasis supplied.]

In *Sydney M. Shoenberg, supra*, the Board held that "the forms and ceremonies which taxpayer employed lacked the spark of vitality essential to a bona fide sale; that there was a persisting intention to hold title; and that in the mind of the taxpayer he never really parted with dominion over the stock." The Board further held that, if the steps taken were sufficient to constitute a bona fide sale, the taxpayer, during all the time he was out of possession, held an option to buy back from the corporation, which was exercised immediately on the expiration of 30 days after the sale, thus bringing the transaction within the "wash sales" provisions of section 118 of the Revenue Act of 1928. That case is distinguishable from the instant proceeding on both grounds.

This proceeding is controlled and governed by the Revenue Act of 1928. That act deals with (1) individuals and (2) corporations, which are in many respects dealt with separately. Sections 11 and 12 fix the rates of normal tax and surtax on the taxable income of individuals; section 13 fixes the rate of tax on corporations. In section 23, dealing with "Deductions from Gross Income", subsection (e) enumerates losses deductible by individuals and subsection (f) those deductible by corporations. Section 25 deals with "Credits of Individual Against Net Income" and section 26 deals with "Credits of Corporation Against Net Income." Section 51 deals with "Individual Returns" and section 52 with "Corporation Returns." The act throughout evidences a plan and purpose on the part of Congress to recognize corporate entity. This is not only true of the 1928 act, but it is also true of previous revenue acts. In *Eisner* v. *Macomber*, 252 U.S. 189, the United States Supreme Court, in a case which arose under the Revenue Act of 1916, recognized the purpose and plan of that revenue act in the following language:

* * * But, looking through the form, we cannot disregard the essential truth disclosed, ignore the substantial difference between corporation and stockholder, treat the entire organization as unreal, look upon stockholders as partners, when they are not such, treat them as having in equity a right to a partition of the corporate assets, when they have none, and indulge the fiction that they have received and realized a share of the profits of the company which in truth they have neither received nor realized. *We must treat the corporation as a substantial entity separate from the stockholder*, not only because such is the practical fact but because it is only by recognizing such separateness that any dividend—even .one paid in money or property—can be regarded as income of the stockholder. Did we regard corporation and stock-

holders as altogether identical, there would be no income except as the corporation acquired it; and while this would be taxable against the corporation as income under appropriate provisions of law, the individual stockholders could not be separately and additionally taxed with respect to their several shares even when divided, since if there were entire identity between them and the company they could not be regarded as receiving anything from it, any more than if one's money were to be removed from one pocket to another. [Emphasis supplied.]

Hence, to ignore or disregard the corporate entity is in effect to ignore and disregard the purpose and plan of Congress clearly expressed in valid legislation enacted pursuant to the Sixteenth Amendment to the Federal Constitution.

There is no express provision in the act prohibiting any corporation from dealing with its own stockholders, nor does it in any way restrict the actions of any corporation in dealing with its own stockholders. Section 23 (f) of the 1928 Act provides that a corporation may deduct from gross income " losses sustained during the taxable year and not compensated for by insurance or otherwise." If Congress had intended not to allow the deduction by a corporation of losses arising from transactions between it and its stockholders it could readily have so stated. Until it does this, we are bound by the statutes that it has enacted, as pointed out in *Jones* v. *Commissioner, supra.*

In the construction and application of the Federal tax statutes with which we are here concerned it is not necessary to resort to other statutes, Federal or state, or to the precedents in which they have been construed or applied, for the reason that these Federal tax statutes and the precedents under them upon which we rely in this proceeding are sufficiently comprehensive and plain for our purposes. Furthermore, other statutes, Federal and state, and the precedents under them, are so different in their scope and language that it is doubtful if resort to them would be helpful. No such other statutes or precedents which are helpful have been brought to our attention.

An exception to section 23 (f), *supra*, is contained in section 118 of the same act, generally referred to as the " wash sales " provision. This section is applicable to all sales of shares of stock or securities made under the conditions stated in that section. Had Congress intended also to exclude all losses arising from the sale of stock by a corporation to its stockholder from the losses deductible under section 23 (f), it could as readily have so provided as it did provide in section 118 for the disallowance of so-called " wash sales " losses. Furthermore, there are no facts presented in this proceeding which bring it within the exception which is contained in section 118. The

parties have stipulated that the securities in question were "sold" by the corporation to the petitioner, that delivery thereof was made and the purchase price, based on the market, was paid. As hereto-fore indicated, section 118 is not applicable to the facts of this proceeding.

In our opinion, therefore, the respondent erred in disallowing the deduction in the sum of $15,100.

The parties stipulated that the amounts of $46,052 and $5,000, respectively, also deducted by the petitioner in its income tax return for the year 1930 and disallowed by respondent, shall be disallowed as losses of the petitioner for the calendar year 1930. Effect will be given to this stipulation in the recomputation.

Reviewed by the Board.

*Decision will be entered under Rule 50.*

ADAMS, dissenting: I am unable to agree with the opinion of the majority in this proceeding.

The question here is, Can one in control of all the stock of a corporation so deal with the corporation by buying from it or selling to it as to establish gains or losses at his pleasure which must be recognized for purposes of taxation?

The petitioner here is a creature of the laws of Illinois. The statutes of that state provide that a corporation may be organized by three or more persons, and further that the business of the corporation shall be controlled by a board of directors. At the time of this transaction, D'Ancona was the owner of all the stock of petitioner except two qualifying shares which were controlled by him.

We have before us the corporation, and in order to determine its tax liability it becomes necessary to examine its transaction with its sole owner. The respondent asks us to disregard the corporate entity and to look through the form of the transaction to its substance and to determine the tax status of petitioner from this viewpoint. He contends that for the purposes of this proceeding the corporation and its sole owner are one and the same. Petitioner, on the other hand, contends that its taxable status must be determined as would that of any other corporation, and that its transactions with its sole owner must be judged as though they were ordinary and normal business transactions; as though they were strangers and dealt at arm's length.

Petitioner bases its contention and the majority report is grounded on the holding in the case of *Burnet* v. *Commonwealth Improvement Co.*, 287 U.S. 415. That case is readily distinguishable from the situation here. It will be noted that in that case we had before

us the corporation which was seeking to deny its own existence for its own purposes. Here, we have the corporation asserting that it and its sole owner are separate entities for the purposes of this case. Here the corporation petitioner asserts that the reasoning in that case denies to the Commissioner the right to disregard its corporate entity. Although a corporation cannot deny its own existence, it does not follow that its corporate entity may not be disregarded upon the application of other interested parties, such as the Commissioner in this case.

Corporations are legal fictions authorized for the benefit and convenience of the individual citizen, and are, under our economic conditions, necessary in order that commercial enterprises requiring large capital may be promoted and at the same time the liability of the individuals associated therein may be limited.

It is recognized that a corporation is an entity distinct from its stockholders and ordinarily, when used for the legitimate business purposes for which it was created, it must be so dealt with, but the law has never lost sight of the fact that the juridical personality of the corporation is but a collective expression of the real personality of the true owners, and it has always been competent, in a proper case, to disregard the corporate fiction and determine the true owners, who, acting through their representative directors, manage and control the affairs of the corporation. *United States* v. *Phellis*, 257 U.S. 156; *Labrot* v. *Burnet*, 57 Fed. (2d) 413; *Reed* v. *United States*, 51 Fed. (2d) 931; *112 West 59th St. Corp.* v. *Helvering*, 68 Fed. (2d) 397; *Southern Pacific Co.* v. *Lowe*, 247 U.S. 330; *Gulf Oil Corp.* v. *Lewellyn*, 248 U.S. 71; *Superior Oil Co.* v. *Mississippi*, 280 U.S. 390; *Shotwell* v. *Moore*, 129 U.S. 590; *Hamilton Ridge Lumber Sales Corp.* v. *Wilson*, 25 Fed. (2d) 592. Fundamentally a corporation must, after all, be considered as a collection of human beings, and where, as here, it is owned and controlled by one person, we must recognize that it is in point of fact the *alter ego* of the individual when it is so used as to make it merely an instrumentality or conduit of the individual for the accomplishment of ends which he would not be permitted to accomplish without it. Cf. *Interstate Telephone Co.* v. *Baltimore & Ohio Telephone Co.*, 51 Fed. 49; affd., 54 Fed. 50; *United States* v. *Milwaukee Refrigerator Transit Co.*, 142 Fed. 247; *Linn & Lane Timber Co.* v. *United States*, 236 U.S. 574. There is a limitation to the doctrine of separate existence and " it is properly disregarded in cases of fraud, circumvention of contract or statute, public wrong, monopoly and like instances." Fletcher, Private Corporations, sec. 42. Although corporate entity is more commonly disregarded in cases where the transaction is tainted with fraud, it is by no means limited to such transactions.

In *Hamilton Ridge Lumber Sales Corp.* v. *Wilson*, *supra*, the court said:

This principle has not been more clearly stated, perhaps, than by the Supreme Court of Ohio, in *State* v. *Standard Oil Co.*, 49 Ohio St. 137, 30 N.E. 279, 15 L.R.A. 145, 34 Am. St. Rep. 541, where it is said:

"On a question of this kind, the fact must constantly be kept in view, that the metaphysical entity has no thought or will of its own; that every act ascribed to it emanates from and is the act of the individuals personated by it; and that it can no more do an act, or refrain from doing it, contrary to the will of these natural persons, than a house can be said to act independently of the will of its owner; and where an act is ascribed to it, it must be understood to be the act of the persons associated as a corporation, and whether done in their capacity as corporators or as individuals, must be determined by the nature and tendency of the act."

\* \* \* \* \* \* \*

Nor, can I agree with the contention of counsel for the bank that this doctrine is applicable only in cases where the corporate entity has been resorted to for purely fraudulent and criminal purposes. I do not find that the rule is subject to any such limitations, but, on the contrary, that it is applicable wherever reason and justice require its application, though the acts of the parties amount to constructive fraud only. 14 Corpus Juris, 59; Clark on Corporations (3d Ed.), p. 10; Marshall on Corporations, p. 16, *supra*.

Whenever the corporate form is used in an endeavor to evade a statute or to modify its intent, courts will disregard the corporate fiction and look at the substance of the transaction. *United States* v. *Lehigh Valley R.R. Co.*, 220 U.S. 263; *Miller & Lux* v. *East Side Canal & Irrigation Co.*, 211 U.S. 293. The former case is in point here. The Lehigh Valley Railroad Co. owned all the stock of the Lehigh Valley Coal Co. The commodities clause of the Hepburn Act made it unlawful for a railroad company to transport in interstate commerce any article or commodity manufactured, mined, or produced by it, or in which it might have any interest, with certain exceptions. In a proceeding brought by the United States against the railroad company, *United States* v. *Delaware & Hudson Co.*, 213 U.S. 366, the Government alleged that it owned stock in the coal company whose coal it was carrying. The court held that stock ownership by a railroad company in a bona fide corporation, irrespective of the extent of such ownership, was not a violation of the statute. In an amended bill the Government then alleged facts to show that the railroad company had absolute control over the coal company through stock ownership, and was using the coal company as a device in order to evade the provisions of the statute. The Supreme Court thereupon held that while the right of the railroad company as a stockholder to use its stock ownership for the purpose of a bona fide separate administration of the affairs of a corporation in which it has a stock interest may not be denied, the use of

such stock ownership so as to commingle its affairs with the affairs of the railroad company brought it within the prohibitions of the statute. Mr. Chief Justice White, in the opinion, said:

In other words, that by operation and effect of the Commodities Clause there is a duty cast upon a railroad company proposing to carry in interstate commerce the product of a producing, etc. corporation, in which it has a stock interest not to abuse such power so as virtually to do by indirection that which the Commodities Clause prohibits.

Here we have an analogous situation. The revenue laws provide that no deduction shall be allowed for any loss claimed from the sale or other disposition of stock where it appears that within 30 days before or after such sale or other disposition the taxpayer has acquired or entered into a contract or option to acquire substantially identical property. The intention of Congress to deny any deduction on account of wash sales of stock is clear, and it applies to all persons. Deductions are in the nature of exemptions and should be strictly construed. Cf. *Cornell* v. *Coyne*, 192 U.S. 418; *Samuel S. Bloch*, 16 B.T.A. 425; affd., 42 Fed. (2d) 1013. They are subjects of specific legislation and before a taxpayer can take a deduction he must show facts which clearly entitle him to it under the statute. The burden is on him and this burden is not sustained by the facts in the record before us. To permit a person who owns or creates a corporation which he controls to circumvent the statute by dealing with the corporation is to put him in a preferred class not intended by the statute and not justified by any theory of corporate fiction. I think that the doctrine enunciated by Mr. Chief Justice White in *United States* v. *Lehigh Valley R.R. Co.*, *supra*, is applicable here. By the operation and effect of the revenue law there is a duty cast upon a person who controls a corporation through stock ownership not to abuse such power by his personal dealings with the corporation so as to accomplish by indirection that which the statute prohibits. In such a case courts should disregard the corporate fiction and recognize that the individual is in reality dealing with himself. I do not think it was the intention of Congress that a corporation and its sole owner could so deal with each other as to avoid the payment of taxes which either of them would otherwise owe.

Nor do I believe, in viewing transactions between a corporation and its sole owner to determine the rights of other interested parties, such as the Government in this case, that the two should necessarily be regarded as separate entities and the rights of such parties fixed by what the corporation and its sole owner do between themselves.

It is not material that the transaction is bona fide between the corporation and its sole owner, in the sense that title passes from one to the other, and that the nominal consideration was the fair market

value, the net result being a mere, transfer of assets by the sole owner from one pocket to the other, these assets remaining always under his domination and control.

In the case of *Helvering* v. *Gregory*, *supra*, in an opinion by L. Hand, Circuit Judge, the court says, among other things:

We agree with the Board and the taxpayer that a transaction, otherwise within an exception of the tax law, does not lose its immunity, because it is actuated by a desire to avoid, or, if one choose, to evade taxation. Anyone may so arrange his affairs that his taxes shall be as low as possible; he is not bound to choose that pattern which will best pay the Treasury; there is not even a patriotic duty to increase one's taxes. *U.S.* v. *Isham*, 17 Wall. 496, 506, 21 L.Ed. 728 (2 Am. Fed. Tax Rep. 2304), *Bullen* v. *Wisconsin*, 240 U.S. 625, 630, 36 Sup. Ct. 473, 60 L.Ed. 830 (3 Am. Fed. Tax Rep. 2944). Therefore, if what was done here, was what was intended by sec. 112(i)(1)(B), it is of no consequence that it was all an elaborate scheme to get rid of income taxes, as it certainly was. Nevertheless, it does not follow that Congress meant to cover such a transaction, not even though the facts answer the dictionary definitions of each term used in the statutory definition. It is quite true, as the Board has very well said, that as the articulation of a statute increases, the room for interpretation must contract; but the meaning of a sentence may be more than that of the separate words, as a melody is more than the notes, and no degree of particularity can ever obviate recourse to the setting in which all appear, and which all collectively create. The purpose of the section is plain enough; men engaged in enterprises—industrial, commercial, financial, or any other—might wish to consolidate, or divide, to add to, or subtract from, their holdings. Such transactions were not to be considered as " realizing " any profit, because the collective interests still remained in solution. But the underlying presupposition is plain that the readjustment shall be undertaken for reasons germane to the conduct of the venture in hand, not as an ephemeral incident, egregious to its prosecution. To dodge the shareholders' taxes is not one of the transactions contemplated as corporate " reorganizations."

I think it is entirely immaterial as to whether a corporation was organized for the specific purpose of transferring to it assets and thereby establishing profit or loss, or whether a corporation already in existence was used for that purpose.

The case of *Jones* v. *Helvering*, 71 Fed. (2d) 214, seems to be in point and to sustain the prevailing opinion herein. With all due respect to that high authority, I am unable to agree with the conclusion reached in the *Jones* case.

Under the authorities above cited, and entertaining these views, I believe that the determination of the Commissioner in this case should be sustained.

LANSDON agrees with this dissent.[1]

---

[1] Prepared during Mr. Lansdon's term of office.