SUSAN T. FRESHMAN, PETITIONER, ET AL.,[1] *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 63964, 65358–65362, 68858, 69659, 69855, 72497.

Promulgated November 8, 1935.

*Valentine B. Havens, Esq., Charles B. McInnis, Esq., Robert B. Cumming, Esq.,* and *Mary H. Donlon, Esq.,* for the petitioners.
*R. W. Wilson, Esq.,* for the respondent.

---

[1] Proceedings of the following petitioners are consolidated and decided herewith: Dorothy L. Low; Angeline Low Forbes; Josiah O. Low; Mary T. F. Low; Nathalie F. Baker; Louise S. Corwin; Walter E. Meyer; Howard E. Perry; Frank J. Porter.

OPINION.

MATTHEWS: Petitioners contend that the stock of the United Aircraft & Transport Corporation was distributed to the stockholders of Niles-Bement-Pond Co. in pursuance of a plan of reorganization and is not taxable in the hands of the stockholders of the Niles-Bement-Pond Co. If, however, the Board should decide against petitioners on that issue, then petitioners contend that the stock of the United Aircraft & Transport Corporation is taxable to them to the extent of its fair market value on March 6, 1929, limited, however, to the amount of earned surplus of the Niles-Bement-Pond Co. accumulated subsequent to March 1, 1913, and finally that the fair market value of the United Aircraft & Transport Corporation's common stock on March 6, 1929, was between $30 and $40 per share, but in no event in excess of $40 per share.

The petitioners argue that the benefits provided by section 112 of the Revenue Act of 1928 in the case of corporate reorganization should not stop with Pratt & Whitney Co., but that the nonrecogni-

tion of gain thereunder should be extended to the stockholders of the Niles-Bement-Pond Co., it being contended that the Pratt & Whitney Co. was in substance the mere instrumentality of its parent corporation, the Niles-Bement-Pond Co., and that it is the latter company which should be deemed the real party to the reorganization.

The respondent admits that the Pratt & Whitney Aircraft Co. and United Aircraft Co. were parties to a reorganization and that the exchange of all of the stock in Pratt & Whitney Aircraft Co. solely for stock in United Aircraft is a nontaxable exchange under the provisions of section 112 (b) (3). He denies, however, that either Pratt & Whitney or Niles-Bement-Pond were parties to a reorganization or that the distribution by Pratt & Whitney to Niles-Bement-Pond of United Aircraft stock and the distribution by Niles-Bement-Pond of United Aircraft stock were distributions of stock in pursuance of a plan of reorganization. He takes the position that such distributions were dividends paid in property and that the dividends received by the petitioners are income to them to the amount of the market value of United Aircraft stock on March 6, 1929, the date on which the dividend was payable and was paid to the shareholders. He determined this market value to be $87.8125 per share.

The pertinent provisions of section 112 of the Revenue Act of 1928 are 112 (a), (b) (3), and (i) (1), and (2), which are quoted in the margin.[2]

We agree with respondent's contentions. It is clear that the acquisition by United Aircraft of all of the stock in Pratt & Whitney Aircraft Co. was a reorganization within the meaning of section 112 (i) and that Pratt & Whitney Aircraft Co. and United Aircraft Co. were both parties to the reorganization within the meaning of the statute. The Pratt & Whitney Co. was not a party to the reorganization; it was merely one of the four stockholders of Pratt & Whitney Aircraft Co., which was a party to the reorganization. Although

[2] SEC. 112. RECOGNITION OF GAIN OR LOSS.

(a) *General rule.*—Upon the sale or exchange of property the entire amount of the gain or loss, determined under section 111, shall be recognized, except as hereinafter provided in this section.

(b) *Exchanges solely in kind.*—

*  *  *  *  *  *

(3) STOCK FOR STOCK ON REORGANIZATION.—No gain or loss shall be recognized if stock or securities in a corporation a party to a reorganization are, in pursuance of the plan of reorganization, exchanged solely for stock or securities in such corporation or in another corporation a party to the reorganization.

(i) *Definition of reorganization.*—As used in this section and sections 113 and 115—

(1) The term "reorganization" means (A) a merger or consolidation (including the acquisition by one corporation of at least a majority of the voting stock and at least a majority of the total number of shares of all other classes of stock of another corporation, or substantially all the properties of another corporation), *  *  *

(2) The term "a party to a reorganization" includes a corporation resulting from a reorganization and includes both corporations in the case of an acquisition by one corporation of at least a majority of the voting stock and at least a majority of the total number of shares of all other classes of stock of another corporation.

Pratt & Whitney Co. and the other stockholders of the Pratt & Whitney Aircraft Co. realized a gain on the exchange of their Pratt & Whitney Aircraft stock for United Aircraft stock, the gain on such exchange was not recognized under the provisions of section 112 (b)(3). In such a case the basis for determining gain or loss on the sale of United Aircraft stock is the same as in the case of the stock exchanged, under the provisions of section 113 (a)(6). However, the cost or basis for determining gain or loss on the sale of property by a corporate owner is not necessarily the value at which stockholders of the corporation would have to report a dividend paid in such property.

This is the case of a corporate stockholder receiving a dividend in property and immediately distributing the identical property to its stockholders as a dividend.

The term " dividend " is defined in section 115 (a) as " any distribution made by a corporation to its shareholders, whether in money or in other property, out of its earnings or profits accumulated after February 28, 1913 ", and it is further provided in subsection (b) of section 115 that every distribution is made out of earnings or profits to the extent thereof, and from the most recently accumulated earnings or profits. Article 627 of Regulations 74 reads in part as follows:

ART. 627. *Dividends paid in property.*—Dividends paid in securities or other property (other than its own stock) in which the earnings of a corporation have been invested, are income to the recipients to the amount of the market value of such property when receivable by the shareholders.  *  *  *

The Pratt & Whitney Co. invested $500 of its earnings in 1925 in common stock of Pratt & Whitney Aircraft Co. This stock had increased enormously in value by 1929 and was exchanged in February 1929 solely for stock of United Aircraft Co. but the gain on the exchange was not recognized under the provisions of section 112 (b)(3). The increase in value of the investment, which, after the exchange, was represented by the property received on exchange, was available for distribution as a dividend and was distributed by Pratt & Whitney to its sole stockholder, Niles-Bement-Pond. This dividend was an earning of Niles-Bement-Pond on its Pratt & Whitney stock, which earning was received on February 11, 1929, and was available for distribution by Niles-Bement-Pond to its stockholders. Niles-Bement-Pond immediately distributed practically all of the property received by it as a dividend to its stockholders. This was a distribution by a corporation to its stockholders in property out of earnings received after February 28, 1913.

The distribution meets all the requirements of section 115 and is a taxable dividend to petitioners to the amount of the market value of the stock on March 6, 1929.

The parties stipulated that the earnings for the period March 1, 1913, to March 6, 1929, inclusive, of the Niles-Bement-Pond Co. and subsidiaries other than Pratt & Whitney Co., reflected on the books and records of the companies, amounted to $1,540,744.56 before the revaluation of any part of the common stock of the United Aircraft received from Pratt & Whitney Co. The petitioners insist that this sum of $1,540,744.56 represents all the earnings of the Niles-Bement-Pond Co. subsequent to March 1, 1913, which were available for distribution on March 6, 1929.

Petitioners overlook the fact that the value at which Niles-Bement-Pond Co. entered the dividend received by it in United Aircraft stock on its books is not conclusive as to the earnings from such dividend. The dividend received by Niles-Bement-Pond on February 11, 1929, was entered on its books at $494.35 (the basis of the United Aircraft stock to Pratt & Whitney) and it is included in the accumulated earnings at this amount. As a matter of fact, therefore, the earnings since March 1, 1913, available for distribution on March 6, 1929, were the earnings accumulated prior to March 6, 1929, and also the 429,100 shares of United Aircraft stock. The distribution of 409,062½ shares of United Aircraft as a dividend did not affect the earnings accumulated between March 1, 1913, and March 6, 1929. They were still available for distribution. The distribution was a dividend in property, and it was paid out of earnings accumulated since March 1, 1913. It is taxable to petitioners to the amount of the market value of the property when received. *Peabody* v. *Eisner*, 247 U. S. 347; *United States* v. *Phellis*, 257 U. S. 156; *Rockefeller* v. *United States*, 257 U. S. 176; *Binzel* v. *Commissioner*, 75 Fed. (2d) 989, affirming an unreported Board decision; certiorari denied, 296 U. S. 579.

The market value of the stock on March 6, 1929, is a question of fact. In finding that the value of the stock on March 6 was $87.8125, which is the same value as that determined by the respondent, we have carefully considered all the evidence and the arguments of petitioners in support of a lower value. While the evidence tends to show that the intrinsic value of United Aircraft stock, based on the assets of the constituent companies and their past earnings, was less than the market price of the stock, and that the stock was not recommended by Poor and other analysts as an investment, it had been selling for a period of over two months prior to the distribution at prices as high and higher than that determined by the respondent, and for a period of over six months after distribution, except for a period of about three weeks just prior to its listing on the New York Stock Exchange, the stock had sold for much more than the value determined.

On the first day of trading on the New York Curb Exchange, November 3, 1928, the common stock opened at 57. The high for

the common stock on that date was 63 and the low 55. The number of shares traded on the first day was 1,200. The highest number of shares traded in any one day prior to February 11 (the date the dividend was declared) was 11,000 shares on January 31, with a high of 98¾ and a low of 94. On March 1 the number of shares traded was 13,800, with a high of 91 and a low of 90. On March 6 (the date the stock was distributed) the number of shares traded was 4,500, at a high of 87⅞ and a low of 86¾. From December 14, when the stock reached a high of 90, until March 6, the stock never went below 85 and was over 90 most of the time.

On the third day of trading on the New York Stock Exchange, the stock reached 90, when 28,100 shares were traded, and six days later it reached a high of 109, a low of 96, with 61,900 shares traded. Thereafter the stock never went below 100 until the last week of September. On May 1 it reached a high of 162, with 127,900 shares traded.

It is interesting to note that the closing quotation of Niles-Bement-Pond Co. common stock on the New York Curb on March 6 was 226, and that on March 8 (there was no quotation on this stock on March 7), the closing was 38⅞, a difference of 187⅛, which is slightly more than the market value as determined, of 2⅛ shares of United Aircraft stock at time of distribution.

Reliance is placed by the petitioners on the testimony of two witnesses who qualified as experts in the valuation of securities and who testified that they both had knowledge of the common stock of the United Aircraft. One witness expressed the opinion that the stock was worth $37.50 per share on March 6, 1929, and the other fixed a fair market value on this date of $40 per share. In the opinion of one of these witnesses, the quotations on the New York Curb Exchange reflected a hysterical state of mind on the part of the speculative public in the early part of the year 1929, with the result that the stock quotations reached points unsupported by the assets back of the stocks and their earning power. But we have evidence of actual unrestricted sales of the stock of the United Aircraft over a long period of time at greater prices than the petitioners seek to establish as the fair market value on March 6, 1929. These reported sales, in our opinion, more nearly reflect the fair market value of this stock than does the opinion evidence. We hold, therefore, that the respondent did not err in his determination that the fair market value of the common stock of the United Aircraft was $87.8125 on March 6, 1929.

The question as to whether the market value of certain rights to subscribe to bonds of the American Telephone & Telegraph Co. is taxable income arises in the case of petitioner Howard E. Perry only, and requires little discussion. Petitioner exercised these rights

and did not dispose of them. The respondent concedes that this issue falls within the principle of *T. I. Hare Powel*, 27 B. T. A. 55, which case was dismissed by the Circuit Court of Appeals for the First Circuit on July 6, 1933; and *Robert C. Cooley*, 27 B. T. A. 986; affd., on another issue, 75 Fed. (2d) 188. See also *Thomas W. White*, 29 B. T. A. 1272; *James A. Connelly*, 30 B. T. A. 331; *Bradley W. Palmer*, 32 B. T. A. 550; *Margaret P. Daly*, 32 B. T. A. 965. On authority of these decisions, we hold that the value of these rights did not represent taxable income to the petitioner.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*