860

F. J. Young Corporation, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

L. D. Pierson Corporation, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket Nos. 74321, 74347. Promulgated April 9, 1937.

*L. T. Atherton, Esq.*, for the petitioners.
*I. Graff, Esq.*, for the respondent.

OPINION.

Arundell: These proceedings, duly consolidated, involve deficiencies in income taxes for the year 1930 in the amount of $30,314.59 in Docket No. 74321, and $30,674.59 in Docket No. 74347.

The issue involved is whether a distribution in kind made by a corporation to the petitioners as stockholders thereof constituted a dividend within the meaning of section 115 (a) and (b) of the Revenue Act of 1928 or a distribution within the meaning of section 115 (d) of the same act.

The facts were stipulated and we state herein only such facts as are necessary to an understanding of the questions involved.

The petitioners are Delaware corporations organized on March 29, 1930. At the time of organization they each acquired stock of Yeager, Young & Pierson, Inc., a New York corporation, as follows: 1,060 shares common, no par value; 70 shares 6 percent noncumulative preferred, $100 par value; and 37 shares 7 percent cumulative preferred, $100 par value.

At March 29, 1930, Yeager, Young & Pierson, Inc., hereinafter called Yeager, Inc., owned securities in other corporations, among which were 87,000 shares of stock in the Empire Corporation. The parties agree that the Empire Corporation shares. were acquired by Yeager, Inc., in 1929 in a transaction on which no gain or loss was recognized under section 112 (b) (5) of the Revenue Act of 1928. The property exchanged by Yeager, Inc., for the Empire Corporation shares had a cost, and basis, of $36,000; the Empire Corporation shares received on the exchange had a fair market value of $957,000 when received in September 1929.

On April 3, 1930, Yeager, Inc., declared a dividend on its common stock, payable in securities. Accordingly, on that date each of the petitioners, as owners of common stock of Yeager, Inc., received as a dividend securities having a fair market value of $221,758.74, including 19,061 shares of Empire Corporation stock of the fair market value of $190,610.

It was the practice of Yeager, Inc., at all times to carry its securities on its books, whether acquired for investment or resale, at cost. The cost to that corporation of the securities distributed by it on April 3, 1930, to its common stockholders was $121,931.

The holders of common stock of Yeager, Inc., were not required to and did not surrender their shares of stock in that corporation as a condition precedent to receiving the above distribution. The authorized capital of that corporation was not reduced prior to or coincident with the adoption of the above resolutions of April 3, 1930. Subsequent to such distribution of April 3, 1930, Yeager, Inc., continued in business until 1932, when it became inactive due to financial difficulties.

The net income of Yeager, Inc., according to its books, from organization in 1927 to March 31, 1930, amounted to $284,347.79. During that period dividends paid by it in cash or accrued amounted to $64,389.42. In addition to cash dividends paid and accrued, the corporation in 1928 declared and paid a dividend on its common stock payable in its 7 percent preferred stock, which dividend was entered on its books as a charge to surplus in the amount of $17,144.22. Also in 1928 it increased the stated value of its common stock from $1 to $5 per share by transferring $19,372 from surplus account to common stock. In 1929 it again increased the stated value of the common stock by transferring to that account from surplus account the sum of $49,380, which was at the rate of $10 per share of common stock outstanding. The book surplus of Yeager, Inc., at April 1, 1930, was $134,062.15.

Each petitioner in its income tax return for 1930 included in gross income $206,518 as representing the fair market value of dividends in kind received from Yeager, Inc., and deducted an equal amount.

Section 23 (p) (1) of the Revenue Act of 1928 allows corporations to take as a deduction "the amount received as dividends from a domestic corporation." The petitioners claim a deduction under this section, saying that the Empire Corporation stock received from Yeager, Inc., was a dividend from the most recently accumulated earnings and profits of Yeager, Inc. The statutory provisions said to be applicable are subsections (a) and (b) of section 115 of the Revenue Act of 1928. These provisions are, in substance, that a

"dividend" means any distribution out of corporate earnings and profits accumulated after February 28, 1913, and that for the purposes of Title I of the act "every distribution is made" out of the most recently accumulated earnings or profits to the extent thereof. These provisions are quoted below.[1] We are not concerned here with earnings or profits before 1913, as Yeager, Inc., was not organized until 1927. The respondent's primary view is that subsection (d) of section 115 is controlling. That subsection, set out below,[2] provides, in so far as here material, that any distribution not in liquidation and from a source other than earnings or profits shall apply first against the basis of the stock and any excess shall be treated as ordinary income. Thus the difference between the petitioners' and the Commissioner's view is whether or not the gain to Yeager, Inc., on the Empire Corporation stock transaction constitutes "earnings or profits" under section 115.

Yeager, Inc., in this case occupies the same position in the chain of transactions as did the Pratt & Whitney Co. in the case of *Susan T. Freshman*, 33 B. T. A. 394. The similarity is readily apparent from the following comparison of the several steps in the two cases:

| *Freshman case* | *This case* |
|---|---|
| 1. Pratt & Whitney Co., owning stock of Pratt & Whitney Aircraft Co., exchanged that stock solely for stock of United Aircraft Co. | Yeager, Inc., owning stock of Empire Public Service Corporation, exchanged that stock solely for stock of Empire Corporation. |
| 2. Pratt & Whitney Co. declared and paid to its sole stockholder, Niles-Bement-Pond Co., a dividend in the stock of United Aircraft Co. | Yeager, Inc., declared and paid to its two stockholders, F. J. Young Corporation and L. D. Pierson Corporation, a dividend in the stock of Empire Corporation. |

[1] SEC. 115. DISTRIBUTIONS BY CORPORATIONS.

(a) *Definition of dividend.*—The term "dividend" when used in this title (except in section 203 (a) (4) and section 208 (c) (1), relating to insurance companies) means any distribution made by a corporation to its shareholders, whether in money or in other property, out of its earnings or profits accumulated after February 28, 1913.

(b) *Source of distributions.*—For the purposes of this Act every distribution is made out of earnings or profits to the extent thereof, and from the most recently accumulated earnings or profits. Any earnings or profits accumulated, or increase in value of property accrued, before March 1, 1913, may be distributed exempt from tax, after the earnings and profits accumulated after February 28, 1913, have been distributed, but any such tax-free distribution shall be applied against and reduce the basis of the stock provided in section 113.

[2](d) *Other distributions from capital.*—If any distribution (not in partial or complete liquidation) made by a corporation to its shareholders is not out of increase in value of property accrued before March 1, 1913, and is not out of earnings or profits, then the amount of such distribution shall be applied against and reduce the basis of the stock provided in section 113, and if in excess of such basis, such excess shall be taxable in the same manner as a gain from the sale or exchange of property. The provisions of this subsection shall also apply to distributions from depletion reserves based on the discovery value of mines.

In the *Freshman* case the investment of the Pratt & Whitney Co. in stock of the Pratt & Whitney Aircraft Co. had increased substantially by the time of the exchange, and the increase was reflected in the value of the stock received in exchange. In this case Yeager, Inc., invested $36,000 in stock of the Empire Public Service Corporation and it received therefor stock worth $957,000. In the *Freshman* case, speaking of the realization of the increase in value, we said:

> The increase in value of the investment, which, after the exchange, was represented by the property received on exchange, was available for distribution as a dividend and was distributed by Pratt & Whitney [Co.] to its sole stockholder, Niles-Bement-Pond.

Earlier in the opinion we said that although the Pratt & Whitney Co. "realized a gain" on the exchange the gain was not recognized under section 112 (b) (3). Obviously the language quoted means an ordinary dividend as distinguished from liquidating dividends or other dividends treated specially in the statute. And the holding of that case, in so far as it involves the Pratt & Whitney Co., is that the gain on the exchange of stock for stock constitutes earnings or profits available for dividends even though that gain was of a character to come within the nonrecognition provisions. It is not a material difference that in the *Freshman* case the exchange was held to come within section 112 (b) (3), while here the parties have agreed that the exchange was one within section 112 (b) (5). Both are nonrecognition provisions. In *Robert McCormick, Executor*, 33 B. T. A. 1046, we held that a gain to a corporation under the exchange provisions of the Revenue Act of 1926 which was not recognized nevertheless "resulted in a realized gain" to the corporation and was available for dividends. In *Helen Sperry Lea*, 35 B. T. A. 243, we held that a profit realized by a corporation on an exchange— without deciding whether or not such profit was taxable income to the corporation—went into the corporate earnings and was available for dividends. These holdings are in line with the decisions to the effect that earnings or profits are not the equivalent of taxable net income, *Charles F. Ayer*, 12 B. T. A. 284; *R. M. Weyerhaeuser*, 33 B. T. A. 594, and the Commissioner's regulations of long standing providing that certain items of exempt income, when received by a corporation, become available for dividends to the same extent as other income. Art. 1541, Regulations 62, 65, and 69; art. 621, Regulations 74 and 77. The *Ayer* case involved distributions from a depletion reserve, which under the facts we held to be taxable dividends to the individual stockholder. We said in part:

> This is not the only case where some income or profit free from tax in the hands of a corporation is, nevertheless, taxable to a stockholder upon distribution. Dividends on stock of domestic corporations, interest on bonds and

obligations of States and municipalities, and statutory exemptions are not a part of the statutory net income of a corporation, but are nevertheless a part of its earnings or profits and may form a part of ordinary dividends which are taxable when received by the stockholders. On the other hand, corporations frequently make expenditures which are not deductible from gross income for income-tax purposes, but which nevertheless reduce earnings or profits. It therefore follows that the earnings or profits mentioned in section 201 (a) of the Revenue Act of 1921 are not the equivalent of the taxable net income of the corporation. In this connection see *National Grocery Co.*, 1 B. T. A. 688, and *Lynch* v. *Hornby*, 247 U. S. 339.

Counsel for the respondent attempts a distinction between the effect of exempt income and nonrecognized income by saying that on the receipt of exempt income there is a realized gain or sustained loss—in short, a closed transaction. A similar distinction, without any stated reason therefor, is made in article 115–1 of Regulations 86, pertaining to the Revenue Act of 1934, in the provision that gains or profits under the reorganization and exchange provisions enter into earnings or profits "at the time they are recognized." These regulations do not by their terms purport to be retroactive to reach transactions under the Revenue Act of 1928. The distinction attempted in argument does not seem based on any sound reasons. Nonrecognized income may be "realized" as fully, and may have as profound an effect on earnings or profits, as exempt income. Even cash income may be nonrecognized, as under the involuntary conversion provisions, but certainly it must affect earnings or profits. Likewise as to expenditures. We pointed out in the *Weyerhaeuser* case, *supra*, that items such as extraordinary expenses, charitable contributions, and Federal taxes, not deductible in computing taxable income, may nevertheless affect earnings or profits under ordinary methods of accounting. Nor do we see why an exchange coming within the nonrecognition provisions may not be a transaction that is "closed" as fully as one resulting in a recognized gain or loss. A transaction whereby a corporation, or an individual, becomes completely divested of ownership would seem to be "closed" whether or not anything is received in exchange.

The argument made does not convince us of error in the *Freshman*, *McCormick*, and *Lea* cases, *supra*, and, following them, we hold that the gain on the Empire stock transaction should be included in the "earnings or profits" of Yeager, Inc., within the meaning of section 115 (a) and (b) of the Revenue Act of 1928.

As to whether the amounts capitalized in 1928 and 1929 should be considered in determining the earnings and profits available to Yeager, Inc., for distribution to its stockholders as dividends, it has been held that a stock dividend distributed by a corporation to its stockholders "did not represent income under the provisions of our laws, as it did not in fact effect a distribution of corporate earn-

ings." *Edward D. Untermeyer*, 24 B. T. A. 906, 912; affirmed in *Untermeyer* v. *Commissioner*, 59 Fed. (2d) 1004; certiorari denied, 287 U. S. 647. In *August Horrmann*, 34 B. T. A. 1178, the Board stated:

Much of the argument here is addressed to the matter of the nature of dividends paid in stock and their effect on corporate earnings and surplus. A dividend in cash, of course, operates to diminish earnings and profits. A stock dividend of the type dealt with in *Eisner* v. *Macomber*, 252 U. S. 189, does not. *Hugh R. Wilson*, 3 B. T. A. 957; *J. T. Hedrick*, 24 B. T. A. 444; *Edward D. Untermeyer*, 24 B. T. A. 906; *J. W. McCulloch*, 29 B. T. A. 67; *H. Y. McCord*, 31 B. T. A. 342; *Walker* v. *Hopkins*, 12 Fed. (2d) 262. The dividend in the *Eisner* v. *Macomber* case, *supra*, was in common stock on stock of the same kind; here, it is in preferred stock on common stock, which was the only class outstanding.

If the issuance of stock as a dividend and the consequent capitalization of earnings and profits does not constitute a distribution and does not operate to diminish earnings and profits, much less does a mere book entry capitalizing earnings constitute a distribution or operate to diminish earnings and profits. The book entries took nothing from the corporation and gave nothing to the stockholders. Cf. *August Horrmann*, *supra*. The amounts transferred could have been retransferred at any time to surplus by the direction of the board of directors. We therefore hold that the amounts of $19,372 and $49,380 transferred from surplus in 1928 and 1929, respectively, to the no par common stock account should be included in the earnings and profits of Yeager, Inc., available for distribution in 1930.

At the hearing the petitioner also contended that the amount of $17,144.22, transferred from surplus account to the 7 percent cumulative preferred stock account upon the declaration and payment of a dividend of such preferred stock on common stock in 1928, should be restored to surplus for the purpose of determining the amount of earnings and profits available for dividends. Such contention, however, was omitted on brief of petitioners. Whether or not by so doing it was intended to waive such contention, in any event we are unable to determine from the facts before us whether that distribution constituted a taxable distribution or a stock dividend not subject to tax. Whether earnings and profits were reduced by such a stock dividend is dependent upon whether it was a taxable distribution or not. *August Horrmann*, *supra*. We are unable to determine whether or not both common and 6 percent and 7 percent preferred stock were outstanding when the 7 percent preferred stock dividend was distributed, *Koshland* v. *Helvering*, 297 U. S. 702, or whether at that time only common stock was outstanding. *August Horrmann*, *supra*. In the *Koshland* case a dividend of preferred

stock on common was held to be income, there being both common and preferred outstanding when such dividend was distributed, and in the *Horrmann* case a dividend. of preferred stock on common was held a pure stock dividend and not subject to tax, there being only common stock outstanding when the stock was distributed. Furthermore, it is not necessary for us to decide this question, since the book surplus of $134,062.15, increased by the gain on the Empire Corporation stock transaction in the amount of $921,000 and the $68,752 transferred from the surplus account to the no par common stock account, exceeds the fair market value of the securities distributed on April 3, 1930.

*Decision will be entered under Rule 50.*