J. E. TIMBERLAKE, PETITIONER, *v*. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

ESTELLE FLINTOM TIMBERLAKE, PETITIONER, *v*. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 101096, 101097. Promulgated May 7, 1942.

*Richard E. Thigpen, Esq.*, for the petitioners.
*Charles Oliphant, Esq.*, for the respondent.

1084

OPINION.

BLACK: The first question we have to decide in these proceedings is the fair market value of the shares of stock in the Thomas & Howard Co. of Charleston at the time they were transferred by the Thomas & Howard Co. of Columbia to its stockholders, including petitioners, at $100 per share. If these shares had no greater fair market value at the time of the transfer than $100, it is manifest that petitioners received no dividend in the transaction from the Columbia company of which they were stockholders. Where a corporation sells to its stockholders stock which it owns in another corporation at a price which represents its *fair value* at the time of sale, there is no dividend in the transaction to the stockholder, even though it does turn out that he has made an advantageous purchase. The stockholder will realize his income if and when he sells his stock at a profit. *Palmer* v. *Commissioner*, 302 U. S. 63. Petitioners strongly contend that the fair market value of the stock of the Charleston company was $100 per share on November 9, 1936, at

the time they allege it was purchased from the Columbia company. We think the facts are against petitioners on this contention and we have found that the stock had a fair market value of $150 per share on the date in question. We are convinced from the evidence that the stock had at least that much fair market value.

Petitioners rely principally for their contention that the stock had a fair market value of only $100 per share upon the testimony of their witness, Erskine E. Boyce. Boyce was a representative of Mrs. Jessie W. Thomas, who was the principal stockholder in the Columbia and Charleston companies. He was executive vice-president of the Charleston company and had charge of its finances and credits. He testified that in his opinion the fair market value of the stock of the Charleston company was $100 per share at the time of the transfer November 9, 1936. He conceded that he was no expert in the valuing of corporate stocks and that his opinion as to the valuation of $100 per share was largely arrived at by capitalizing the earnings of the Charleston company over a period extending from 1928 to 1936, inclusive, at 10 percent and that on this basis he arrived at a figure of $105.75 per share. We think there are other facts and figures in the record which demonstrate that this figure of $100 per share given by Boyce as his opinion of the fair market value of the stock at the time of the purported sale was too low. Among these is the fact that already in January of the taxable year a dividend of $10 per share had been paid on the stock and the company had the best earnings in its history in 1936. There is no reason to believe but that petitioners were fully aware of this latter fact.

On December 31, 1936, the Charleston company paid a dividend of $40 per share to its stockholders, including petitioners, who had acquired their stock on November 9, 1936, in the manner already detailed.

On or about February 8, 1937, C. L. Howard sold to Mrs. Jessie Thomas 68 shares of the capital stock of the Charleston company at the price of $150 per share. This sale was made after the Charleston company had diminished its assets by the payment of a 40 percent cash dividend to its stockholders on December 31, 1936. It is true that the witness testified that Mrs. Thomas was influenced to pay $150 per share for these 68 shares of the stock by the fact that she needed these shares for the control of the Charleston company. However, when we consider the large earnings of the Charleston company in 1936 and that 68 of its shares were sold early in 1937 at $150 per share after a dividend of $40 per share had been paid on December 31, 1936, we think it is not unreasonable to conclude that the shares of stock of the Charleston company had a fair market value of at least $150 per share on November 9, 1936, and that the

sale of 775 shares of such stock on that date by the Columbia company to its stockholders, including the petitioners herein, for $100 per share was not an arm's length transaction.

We shall consider next whether the difference between the amounts which petitioners paid the Columbia company for the shares of Charleston company stock and the amounts of the fair market value of the shares at the time they were acquired represented a distribution of earnings and profits of the Columbia company to petitioners that are taxable to them as dividends within the meaning of section 115 of the Revenue Act of 1936. The applicable Treasury regulation is article 22 (a)–1 of Regulations 94, as amended by T. D. 4879, which was quoted by the Commissioner in his determination of the deficiencies and has been set out above.

Petitioners, in their contention that this excess if any did not represent a taxable dividend, make point of the fact that the Columbia company carried the shares of stock which it owned in the Charleston company on its books at cost, and therefore when it sold the stock to its shareholders at $100 per share, which was its cost, the earnings and surplus of the Columbia company were not diminished by the sale and, therefore, there was no distribution of a dividend within the meaning of section 115. To this contention we remark that if the stock had been distributed by the Columbia company to its stockholders as a dividend in kind, the stockholders would undoubtedly have been taxable on the fair market value of the stock at the time of the payment of the dividend, rather than on the amount of the cost of the stock to the Columbia company, regardless of the fact that the Columbia company carried the stock on its books at cost.

That was the effect of the court's decision in *Binzel* v. *Commissioner*, 75 Fed. (2d) 989; certiorari denied, 296 U. S. 579, which affirmed the Board's memorandum opinion in that proceeding. In affirming the Board the court, among other things, said:

As the taxpayer has the burden of proof, we must assume that the stock of the City Bank was purchased out of earnings accrued after March 1, 1913. If so, its increase in value resulted from earnings out of which the stock was originally purchased and pro tanto was added to its surplus available for dividends or for any other purpose. It does not follow, because the United Cork Companies *realized* no taxable profit while it held the shares of the National City Bank, that there was no profit in fact, or that the dividend was not subject to taxes based upon a valuation of the stock that included the increment. That the market value at the time of distribution should be the basis for the income tax is evident from the decisions of the Supreme Court in *United States* v. *Phellis*, 257 U. S. 156, * * *, *Rockefeller* v. *United States*, 257 U. S. 176, * * * as well as under article 627 of Regulations 74.

If the unrealized increment of the stock of the National City Bank represented a distribution of earnings by the United Cork Companies to its stockholders in the *Binzel* case, as the Board and the court

held that it did, then we see no reason why the unrealized increment of the stock in the Charleston company did not represent a distribution of earnings by the Columbia company when it transferred the stock of the Charleston company, which had a fair market value of at least $150 per share, to its stockholders for $100 per share. It seems clear to us that such transaction was a distribution by the Columbia company to its stockholders of earnings to the extent of $50 per share of the unrealized increment on the shares of stock of the Charleston company. Certainly the transaction seems to fall within the ambit of article 22 (a)–1 of Regulations 79, as amended by T. D. 4879, referred to by the Commissioner in his deficiency notices.

The petitioners, however, contend that a Treasury regulation can not make income where none is present and that the regulation in question undertakes to do that very thing and is therefore invalid, and cite in support of their contention *Palmer* v. *Commissioner*, *supra*.

We do not think the Supreme Court's decision in the *Palmer* case supports the contention of petitioner. The Court in that case took particular pains to point out that at the time Superpower committed itself to the sale of United stock to its stockholders the price which it was to obtain for the stock represented its *fair* market value. The Court pointed out that the mere fact that the stock increased in value between the time Superpower had agreed to sell United stock to its stockholders, and the time the stock was actually delivered to them, did not result in the payment of a dividend by Superpower to its stockholders. Among other things, the Court said:

> * * * We accept the findings as at least establishing that the plan was adopted by Superpower in good faith as a means of effecting a sale of its assets to stockholders at *fair market value*. Hence the issue for decision, in so far as the first allotment of stock is concerned, is narrowed to the question of law whether the commitment of Superpower, by formal action of its Board, to the sale of United stock at its *then fair market value* and the ensuing distribution to stockholders is taken out of the category of sales and placed in that of dividends by the fact that, pending execution of the project, rights to subscribe sold on the exchange at substantial prices, or that the stock itself *sold* at prices substantially above the stipulated purchase price. [Italics supplied.]

We have already stated above that, if $100 per share had represented the fair market value of the shares of the Charleston company at the time they were transferred to the stockholders by the Columbia company for $100 per share, there would be no ground to hold that there was any distribution of a dividend by the Columbia company. That is the principle we understand the Supreme Court to have laid down in the *Palmer* case, *supra*. The Supreme Court did not hold that there is not a taxable dividend in a case where, as here, a corporation transfers stock which it owns in another corporation proportionally

to its stockholders for $100 per share, which stock in fact has a fair market value of at least $150 per share at the time of transfer, and the corporation making the transfer has ample earnings to pay a dividend of the amount in question. On the contrary the Court expressed the view that such a transaction would be a taxable dividend to the extent of the excess of the fair market value of the stock over the purported sale price received. In discussing that phase of the subject, the Court said:

On the other hand, such a sale, if for substantially less than the value of the property sold, may be as effective a means of distributing profits among stockholders as the formal declaration of a dividend. The necessary consequence of the corporate action may be in substance the kind of a distribution to stockholders which it is the purpose of section 115 to tax as present income to stockholders, and such a transaction may appropriately be deemed in effect the declaration of a dividend, taxable to the extent that the value of the distributed property exceeds the stipulated price. But the bare fact that a transaction, on its face a sale, has resulted in a distribution of some of the corporate assets to stockholders, gives rise to no inference that the distribution is a dividend within the meaning of section 115. To transfer it from the one category to the other, *it is at least necessary to make some showing that the transaction is in purpose or effect used as an implement for the distribution of corporate earnings to stockholders.* [Italics supplied.]

In the instant case we think the facts embodied in the stipulation and brought out by other testimony at the hearing make such a showing as is referred to by the Supreme Court in the language which we have emphasized above. We, therefore, sustain the Commissioner in his determination that petitioners received dividends in the manner detailed in the deficiency notices.

We do not sustain the Commissioner in his determination of the amounts of the dividends which petitioners received, for we have held on the facts that the shares of stock of the Charleston company had a fair market value of $150 per share at the time they were transferred to petitioners instead of $200 per share, as the Commissioner determined.

One of the reasons urged by petitioners as to why we should not sustain the Commissioner in his determination that the distributions in the amounts stated were dividends is that the stock of the Charleston company was not transferred to the stockholders of the Columbia company in ratable proportions. In view of the facts stipulated in the record, this contention is not sustained. An examination of the figures in the record shows that, while there was some slight variation in the proportions, it was so small as to be negligible. We hold that the stock in question was distributed by the Columbia company to its stockholders in substantial proportion to the stock which they owned in the company.

One of the cases strongly urged by petitioners in support of their position that there was no dividend distribution in the transaction

in question is *George W. Van Vorst, Executor,* 22 B. T. A. 632; affd., 59 Fed. (2d) 677. We think that case is distinguishable on its facts from the instant case. In that case the Board laid emphasis on the fact that there was a disproportionate distribution in that only one stockholder had profited by the advantageous purchases and there was no evidence that the other stockholders had consented to such disproportionate arrangement. In that case, among other things, we said:

> * * * A taxable distribution may be made without the formal declaration of a dividend. Furthermore, a dividend need not be distributed in proportion to shareholdings if the shareholders consent. But here there has been no declaration of a dividend in any certain amount, in fact no declaration of any dividend which bore any relation to this transaction, and no evidence of the stockholders consenting to a *disproportionate distribution.* In our opinion the stipulated facts, including the stipulation that the decedent "purchased" the property, made a prima facie case for the petitioner and it was then incumbent upon the respondent to show that although this was in form a sale, nevertheless it occurred under circumstances which indicate that in fact it was a distribution of earnings or profits accumulated since February 28, 1913. In this connection we see no reason to infer that the stockholders ever agreed to an *unequal distribution.* This majority stockholder undoubtedly purchased at a bargain price and there were stockholders who did not share in the bargain. But bargain purchases do not *ipso facto* require an explanation by the purchaser to avoid tax. Proof of a prima facie case does not require the elimination of all unfavorable possibilities. * * * [Italics supplied.]

We think the foregoing facts recited by the Board in its opinion in the *Van Vorst* case make it distinguishable from the instant case, and not authority for the contention urged by petitioners.

*Decision will be entered under Rule 50.*