Henry S. McKee v. Commissioner. Ethel Hay McKee v. Commissioner.
McKee v. Commissioner
Docket Nos. 112400, 112401.
United States Tax Court
1944 Tax Ct. Memo LEXIS 189; 3 T.C.M. (CCH) 683; T.C.M. (RIA) 44228; July 5, 1944
*189 Austin H. Peck, Jr., Esq., for the petitioners. Earl C. Crouter,esq., for the respondent. ARNOLD Memorandum Opinion ARNOLD, Judge: These proceedings, consolidated for hearing and opinion, involve income tax deficiencies for 1936 as follows: Docket No. 112400, $3,749.70; Docket No. 112401, $5,630.92. The principal issue is whether the increment in value of property acquired by Pacific Investors, Inc., and distributed in kind by its stockholders, including these petitioners, constituted earnings and profits of the corporation, the distribution of which was taxable under section 115, Revenue Act of 1936. If the principal issue is decided against petitioners, an alternative issue is presented as to the value of the property when distributed. The facts are found as stipulated but only the pertinent facts necessary for deciding the issues are hereinafter set forth.
[The Facts] Petitioners kept their records and filed their returns upon the cash basis. Their 1936 income tax returns were duly filed with the collector of internal revenue for the sixth district of California at Los Angeles. Throughout 1936 petitioners owned common stock in Pacific Investors, Inc., a Delaware corporation *190 organized in 1934, as follows: 32,570 shares owned jointly, the income from which is properly divided equally between petitioners. 4,500 shares owned separately by Ethel Hay McKee. Pacific Investors, Inc., had 141,000 shares of common stock and no other class of stock issued and outstanding in 1936. From January 1, 1936 through July 19, 1936, Pacific Investors, Inc., hereinafter referred to as Pacific, owned 17,625 shares of Class "A" common stock of Pacific Southern Investors, Inc., a Delaware corporation, hereinafter referred to as Southern. This Class "A" stock had been acquired at various times prior to 1936 by Pacific at a total cost of $157,360.21. The accumulated earnings and profits of Pacific, as of the beginning of business on January 1, 1936, excluding any amount on account of the increase in value of the Class "A" common stock of Southern between acquisition and July 20, 1936, amounted to $16,658.96, computed as follows: Income for corporation's first year
ending December 31, 1934 loss
($ 1,401.58)
Income for 1935
30,045.51
Net accumulated earnings be-
fore dividends paid in 1935
$28,643.93
Less dividends paid in 1935
11,984.97
Accumulated earnings, Janu-
ary 1, 1936
$16,658.96
*191 The net income of Pacific for 1936, excluding any increase in value of the Class "A" common stock of Southern, amounted to $152,689.16. The accounting records of Pacific throughout its existence were kept on the accrual basis. During 1936 Pacific made the following distributions to all of its stockholders: Distribution
Date
per share
Total distribution
April 1, 1936
.02
$ 2,820.00
July 1, 1936
.02
2,820.00
July 20, 1936
.10
14,100.00
1/8 share of Class
17,625 shares of
"A" common
Class "A" com-
stock of South-
mon stock of
ern
Southern
Dec. 26, 1936
.85
119,850.00
The property dividend of July 20, 1936 consisted of the Class "A" stock hereinabove mentioned. The ex-dividend date for this dividend was July 11, 1936. The dividend resolution was adopted on July 7, 1936, and reads as follows: "RESOLVED: That a dividend, being Dividend No. 6, is hereby declared on the outstanding shares of Common Capital Stock of this Corporation, payable July 20, 1936, to the holders of said shares of record on the books of this Corporation at the close of business July 11, 1936 (which said date of July 11, 1936 is hereby fixed as the record date for determination *192 of stockholders entitled to receive such dividend), as follows: (1) a cash dividend of ten cents (10!) a share, and (2) a dividend in shares of Class A Common Stock of Pacific Southern Investors, Inc. in the proportion of 1/8 share of said Class A Common Stock to each share of outstanding stock of this Corporation and that for the purpose of avoiding the necessity for the issuance of fractional shares of Pacific Southern Investors, Inc., Class A Common Stock where a shareholder of this Corporation would be entitled to a fractional share of Class A Common Stock of Pacific Southern Investors, Inc., cash at the rate of $2.00 for each 1/8 of a share of Class A Common Stock of Pacific Southern Investors, Inc. be paid to the shareholders of this Corporation in lieu of any fractional share of Pacific Southern Investors, Inc." During 1936 petitioners received distributions from Pacific as follows: on the 32,570 shares jointly owned, cash - $32,244.30, property - 4,071 1/8 shares of Class "A" common stock of Southern; on the 4,500 shares owned separately by Ethel Hay McKee, cash - $4,455.00, property - 561 1/2 shares of Class "A" common stock of Southern. On their 1936 income tax returns *193 petitioners disclosed the following taxable dividends received from Pacific; Henry S. McKee - one-half of taxable dividends received on the block of 32,570 shares jointly owned, $16,398.99; Ethel Hay McKee - one-half of taxable dividends received on the block of 32,570 shares jointly owned, $16,399.00, plus taxable dividends received on the block of 4,500 shares separately owned, $4,531.50. Petitioners did not report the balance of the distributions received by them from Pacific in 1936 as dividends taxable under section 115. Petitioners concede on the basis of the final audit of the accounting records of Pacific for 1934, 1935 and 1936, that the taxable dividends received by them in 1936 from Pacific were in excess of the amounts reported on their 1936 income tax returns. They concede that the following amounts are properly includible in their respective 1936 incomes as taxable dividends received from Pacific: Henry S. McKee's one-half of taxable dividends on jointly owned stock, $19,559.10; Ethel Hay McKee's one-half of taxable dividends on jointly owned stock, $19,559.10, plus taxable dividends on separately owned stock of $5,404.73. They deny that any of the balance of the distributions *194 received by them from Pacific during 1936 constituted taxable dividends. Market quotations as of July 20, 1936 on Southern Class "A" stock were $13.75 bid and $14.25 asked, with sales at $14.00. The Commercial & Financial Chronicle, a New York financial publication, gave the following quotations: Bid
Offered
Month ended July 31, 1936,
"as close as possible" to the
end of the month
14
15
Do, June 30, 1936
13 1/4
14
Week ended July 24, 1936
13
14
Week ended July 17, 1936
13
14
The petitioners contend that the fair market value of the Class "A" stock on both July 11 and July 20, 1936 was $14 per share, or an aggregate market value for the property dividend of 17,625 shares of $246,750 at the time of distribution. The respondent contends that the fair market value on the above dates was $15 per share, or an aggregate market value of $264,375. At either value the fair market value of Southern Class "A" stock did not exceed the petitioner's respective costs or adjusted bases for their stock in Pacific. The difference between dividends reported in petitioners' returns and the amount of taxable dividends they now concede, viz., $3,160.11 in the case of Henry S. McKee *195 and $4,033.33 in the case of Ethel Hay McKee, represents their pro rata share of the $29,758.12 undistributed profits at the end of 1936. The additional amount of dividends they now concede is reflected in the Southern stock distributed to them. The applicable statutory provisions are contained in section 115, Revenue Act of 1936, the pertinent portions of which appear in the margin. [1]
*196 Respondent's application of the statute has subjected to taxation all the cash dividends received by petitioners during 1936, plus the property dividends to the extent of the increase in value of the property in the hands of Pacific. In other words, respondent has determined that the difference between the cost of the Class "A" stock to Pacific and its fair market value at July 20, 1936, whether $246,750, as contended by petitioners, or $264,375, as contended by respondent, represents a taxable distribution [to] the stockholders, including these petitioners. Petitioners challenge respondent's application of the statute. They contend that the increment in value of Class "A" stock did not constitute accumulated earnings and profits of Pacific; that the distribution of Class "A" stock to the stockholders of Pacific resulted in no realization of the appreciation in value; and that since Pacific did not distribute earnings and profits by the distribution of Class "A" stock, there was no taxable dividend distribution to the petitioners in excess of the amounts here conceded. We can not agree with respondent's application of section 115 under the present facts. The stipulated facts show *197 that Pacific distributed during 1936, by way of cash dividends, all of its accumulated and current earnings and profits except $29,758.12. The only other distribution made by Pacific during 1936 was Class A stock of Southern. Obviously, this property could only represent a small part, if any, of the earnings and profits of Pacific since it was acquired prior to January 1, 1936 at a total cost in excess of $157,000, whereas the accumulated earnings and profits of Pacific on the latter date amounted to only $16,658.96. Any question as to the taxability of the $29,758.12 has been removed by petitioners' concession that their 1936 taxable dividends should be increased, the stipulated increase being their pro rata share of the $29,758.12 aforementioned. With no accumulated or current earnings available for distribution to its shareholders, sec. 115 (b), the property distributed by Pacific must have been a capital distribution under sec. 115 (d) and not a dividend distribution as defined by 115 (a). The absence of earnings available for distribution distinguishes this case from cases like Commissioner v. Wakefield, (CCA 6) 139 Fed. (2d) 280, reversing a *198 memorandum opinion of the Board of Tax Appeals; Timberlake v. Commissioner, (CCA 4) 132 Fed. (2d) 259, affirming 46 B.T.A. 1082; F. J. Young Corporation, 35 B.T.A. 860, affirmed (CCA 3) 103 Fed. (2d) 137; Elizabeth Susan Strake Trust, 1 T.C. 1131; Susan T. Freshman, 33 B.T.A. 394; and other like cases. Binzel v. Commissioner, (CCA 2) 75 Fed. (2d) 989, certiorari denied 296 U.S. 579, cited and relied upon by respondent, assumes that the stock subsequently distributed as a stock dividend was purchased out of the earnings accrued after March 1, 1913. "If so", said the court, "its increase in value resulted from earnings out of which the stock was originally purchased and pro tanto was added to its surplus available for dividends or for any other purpose." No such assumption can be indulged in in this case, for as hereinabove pointed out, only a small portion, if any, of the Class A stock could have been acquired by Pacific out of its earnings and profits. *199 The present facts are analagous to the facts in the fourth issue in the Estate of H. H. Timken, Deceased, 47 B.T.A. 494, 515, affirmed (CCA 6) 141 Fed. (2d) 625 (decided 4-7-44.), wherein we held that the distributing corporation had no taxable income from the increase in value of shares of stock which it distributed during the taxable year. The cash distributed there exceeded the earnings and profits of the corporation and the taxpayer applied his property distribution against the basis of his stock in the corporation as required by sec. 115 (d). Here, too, we have a situation where cash distributions and the concessions of the petitioners have exhausted all of the earnings and profits of Pacific, so that the remainder of the property distribution must be a distribution of capital within the meaning of 115 (d) and must be applied against and reduce the basis of petitioners' stock in Pacific. It is stipulated that, whether $14 or $15 be the fair market value per share of the Class "A" stock, the fair market value does not exceed their respective costs or adjusted bases. General Utilities & Operating Co. v. Helvering, 296 U.S. 200, *200 supports this result, although the taxpayer there was the distributing corporation and not the distributees of the corporation, as here. The alternative question regarding the valuation of the property distributed need not be considered, in view of our determination of the principal issue. The question may become pertinent upon disposition of either Pacific stock or Southern stock, but it need not now be decided. Decision will be entered under Rule 50. Footnotes
1. DISTRIBUTIONS BY CORPORATIONS. (a) Definition of Dividend. - The term "dividend" when used in this title (except in section 203 (a) (3) and section 207 (c) (1), relating to insurance companies) means any distribution made by a corporation to its shareholders, whether in money or in other property, (1) out of its earnings or profits accumulated after February 28, 1913, or (2) out of the earnings or profits of the taxable year (computed as of the close of the taxable year without diminution by reason of any distributions made during the taxable year), without regard to the amount of the earnings and profits at the time the distribution was made. (b) Source of Distribution. - For the purposes of this Act every distribution is made out of earnings or profits to the extent thereof, and from the most recently accumulated earnings or profits. Any earnings or profits accumulated, or increase in value of property accrued, before March 1, 1913, may be distributed exempt from tax, after the earnings and profits accumulated after February 28, 1913, have been distributed, but any such tax-free distribution shall be applied against and reduce the adjusted basis of the stock provided in section 113. * * * * *
(d) Other Distributions from Capital. - If any distribution (not in partial or complete liquidation) made by a corporation to its shareholders is not out of increase in value of property accrued before March 1, 1913, and is not a dividend, then the amount of such distribution shall be applied against and reduce the adjusted basis of the stock provided in section 113, and if in excess of such basis, such excess shall be taxable in the same manner as a gain from the sale or exchange of property. * * * * *
(j) Valuation of Dividend. - If the whole or any part of a dividend is paid to a shareholder in any medium other than money the property received other than money shall be included in gross income at its fair market value at the time as of which it becomes income to the shareholder.↩